HELEN BRINKLEY v. UNITED BISCUIT COMPANY OF AMERICA, a Corporation, and JAMES FRANCIS McDANIEL, Appellants.

HELEN BRINKLEY v. I. H. SHELL, LEE SHELL and CLAUD MYERS, Appellants.—164 S. W. (2d) 325.

Division One, July 28, 1942.

Rehearing Denied, September 8, 1942.

*Frye & Rowan* for I. H. Shell, Lee Shell and Claud Myers, appellants.

*Finch & Finch* and *R. Kip Briney* for United Biscuit Company of America and James Francis McDaniel, appellants.

*Homer F. Williams* and *C. A. Powell* for respondent.

1232

1234

BRADLEY, C.—Plaintiff is the widow of Ora A. Brinkley, deceased, and brought this action to recover damages for his alleged wrongful death. The cause of action was filed in Bollinger County, but went on change of venue to Stoddard County where plaintiff obtained verdict and judgment for $8,000 against all the defendants. Motions for new trial were overruled and defendants appealed. The appeal of defendants United Biscuit Company and McDaniel is No. 38,016 and the appeal of defendants Shell and Myers is No. 38,017. These appeals were consolidated.

Plaintiff's husband was killed in a collision on highway 61, 8 or 9 miles south of Festus, Missouri, on January 13, 1939, about 6:30 or 7 A. M. Defendant McDaniel was the agent of defendant Biscuit Company and was driving the Biscuit Company truck. Defendant Myers was the agent of the defendants Shell, and was in charge of the Shell truck. Brinkley was driving his own truck. The Shells operated out of Lutesville, Missouri; the Biscuit Company truck was operated out of St. Louis, and the Brinkley truck had a load of lumber from a saw mill at Coldwater, about 22 miles south of Fredericktown,

Missouri, on highway 67. The Shell truck, loaded with hogs and cattle, was headed north, but, at the time of the collision, was standing. The Brinkley truck, loaded with about 5 tons of lumber, was travelling north. The Biscuit ▆ Company truck was headed south, but there is a dispute as to whether it was standing or was moving. The roadway where the collision occurred extended north and south, and was straight for about 200 or 300 feet in each direction from the place of collision. The paved part of the roadway was 18 feet in width, and the dirt shoulders were 8 or 10 feet in width. At the place the roadway was on a fill, the west side of which was quite steep, and was 4 or 5 feet high.

With the Shell truck were defendant Myers and Truman Shell. They stopped at the Ponzer filling station about one-half mile south of the place of collision, and were unable to get their engine started after this stop. An attendant at the station, with a truck, pushed the Shell truck north about a quarter of a mile to the crest of a slight grade, but the engine still did not start. The Shell truck then coasted north about a quarter of a mile from the crest of the grade, but the engine did not start, and Myers said that he "saw that the truck was not going to start, so I proceeded to get it off the highway, on the right, or east side of the pavement, and due to the soft roadbed or shoulder I didn't get it clear off the highway until it bogged down." After the stop Myers said that he got out, checked his lights; that all were on, front and rear, and that from "force of habit, I always set the brakes and put it in gear to hold the car."

Truman Shell rode in the pushing truck with the station attendant up the slight grade, and returned to the station with the attendant to get a mechanic. Myers said that after he functioned about his truck as above stated, he sat in the cab waiting for Truman Shell to return with a mechanic. It was not yet daylight, and a rather heavy snow was falling. While Myers was waiting in the Shell truck cab, the Biscuit Company truck approached from the north and stopped to aid the Shell truck, according to plaintiff's theory. The Brinkley truck approached from the south and struck both the Biscuit Company truck and the Shell truck. Miles Reed, deputy constable, testified that when he arrived, shortly after the collision, the Shell truck had about 6 feet of the pavement blocked on the east side. The Biscuit Company truck, after the collision, was on the west side of the road "3 feet off the concrete and 2 feet on," as estimated by the deputy constable, and was south of the Shell truck, but the evidence is conflicting as to how far south. The Brinkley truck, after the collision, was on the west side of the road, and a short distance north of the Shell truck, and the front end was down at the bottom of the fill. The Brinkley truck was a trailer truck, and the lumber on the trailer crushed the cab, killing instantly Brinkley and a man named Plumb, who was in the cab with Brinkley. Hereinafter we refer to defendants

United Biscuit Company and McDaniel as the Biscuit Company defendants, and to the defendants Shell and Myers as the Shell defendants.

It will not be necessary to state the grounds of negligence alleged in the petition. The negligence relied upon by plaintiff appears in instructions P1 and P2, infra. The Biscuit Company defendants answered separately, but the answers are, in effect, the same. The Shell defendants answered jointly. The respective answers deny the allegations of negligence, and plead contributory negligence on the part of Brinkley. The alleged acts of contributory negligence appear in the instruction, infra, on that subject, and it will not be necessary to state them here. The reply denied the new matter in the answers.

The Biscuit Company defendants assign error on the alleged insufficiency of the evidence to support submission as to them, and on plaintiff's instructions P1, P4, and P5. The Shell defendants assign error on the alleged insufficiency of the evidence to support submission as to them, and on plaintiff's instructions P2, P3, P4 and P5, and on the refusal of their offered Instruction 11D.

The jury was instructed, in plaintiff's Instruction P1, to find for plaintiff and against the Biscuit Company defendants, if they found that Brinkley was driving north and ran into the Biscuit Company truck, and that said truck "was at that time stopped and parked on said highway in such a manner that a part of said truck was on the west part of the pavement of said highway, and that said truck had been parked and stopped on said highway by the defendant James Francis McDaniel . . . and that said truck . . . had been stopped and parked in such a manner that its right side was not as near the right hand side of the highway as practicable and that at the time said truck was run into by the truck being driven and operated by the said Ora A. Brinkley, the said truck belonging to the United Biscuit Company of America had been stopped so close to the truck belonging to the defendants Shells that Ora A. Brinkley did not have room nor time, considering the speed at which he was driving his own truck, to pass between the truck belonging to the defendant the United Biscuit Company of America and the truck belonging to the defendants Shell after the said Ora A. Brinkley saw or by the exercise of the highest degree of care could have seen the truck belonging to the defendants Shell parked on the pavement and that the defendant James Francis McDaniel failed to flag down or to in any other manner warn the said Ora A. Brinkley of the presence of the Shell truck in time for the said Ora A. Brinkley to have avoided running into the truck belonging to the United Biscuit Company of America, and that at the time of said accident it was dark and snowing and other atmospheric conditions existed which rendered the operation of motor vehicles dangerous on said highway, and if you further find that the said Ora A. Brinkley was killed and if you

further find *that the facts that the truck belonging to the United Biscuit Company of America had been stopped and* parked (italics ours) with a portion of it on the pavement of said highway, and that said truck had been stopped and parked in such a manner that its right side was not as near the right hand side of the highway as practicable, and that said truck had been stopped so close to the truck belonging to the defendants Shell that Ora A. Brinkley did not have room nor time considering the speed at which he was driving to pass between the truck belonging to the United Biscuit Company of America and the truck belonging to the defendants Shell after he saw or by the exercise of the highest degree of care could have seen the truck belonging to the defendants Shell parked on the pavement, and that the defendant James Francis McDaniel failed to flag down or to in any other manner warn Ora A. Brinkley of the presence of the Shell truck in time for the said Ora A. Brinkley to have avoided running into the truck belonging to the United Biscuit Company of America, if you find such facts from the evidence in this case directly caused the death of the said Ora A. Brinkley, or that such facts concurred with the negligence, if any, of the defendant Claud Myers in directly causing the death of the said Ora A. Brinkley, and if you find that at the time of said accident the said Ora A. Brinkley was exercising the highest degree of care for his own safety, then your verdict will be for the plaintiff and against the defendants the United Biscuit Company of America and James Francis McDaniel.''

The jury was instructed, in plaintiff's Instruction P2, to find for plaintiff and against the Shell defendants, if they found that Brinkley was driving north and that while he was so driving, he ran into the Shell truck and that the Shell truck "was at that time stopped and parked on said highway in such a manner that a part of said truck was on the east part of the pavement of said highway, and that said truck had been parked and stopped on said highway" by defendant Myers, and that the Shell truck "had been stopped and parked in such a manner that its right side was not as near the right hand side of the highway as practicable, and that at the time said truck was run into by the truck being driven and operated by the said Ora A. Brinkley, the said Shell truck did not have any tail light or other light upon the rear of the same, and that there was no lighted signal lamp or light on the rear of said Shell truck so as to reveal its position and direction at the time of said accident, and that at the time of said accident it was dark and snowing and other atmospheric conditions existed which rendered the operation of motor vehicles dangerous on said highway, and if you further find that the said Ora A. Brinkley was killed and if you further find that the facts that the Shell truck had been stopped and parked with a portion of it on the pavement of said highway, and that the said Shell truck had been stopped and parked in such a manner that its right side was not as near the

right hand side of the highway as practicable, and that there was no rear light or other light upon the rear of said truck at the time it was run into by the said Ora A. Brinkley, and that there was no lighted signal lamp or light on the rear of said Shell truck so as to reveal its position and direction at the time of the accident, and that at the time of said accident it was dark and snowing and other atmospheric conditions existed which rendered the operation of motor vehicles dangerous on said highway, directly caused the death of the said Ora A. Brinkley, or that such facts concurred with the negligence, if any, of the defendant James Francis McDaniel, in directly causing the death of the said Ora A. Brinkley, and if you find that at the time of said accident the said Ora A. Brinkley was exercising the highest degree of care for his own safety, then your verdict will be for the plaintiff and against the defendants, I. H. Shell, Lee Shell and Claud Myers.''

The assignment of the Biscuit Company defendants that there is no substantial evidence to support submission as to them is based on four alleged grounds, viz.: (1) That there. is no substantial evidence to support the claim that the Biscuit Company truck stopped to render aid to the Shell truck; (2) that even though it should be held that it did so stop there is no substantial evidence to support the claim that the truck was stopped so close to the Shell truck that Brinkley did not have room, etc., to pass between the two trucks as submitted in plaintiff's Instruction P1; (3) that there was not any duty devolving upon defendant McDaniel to warn Brinkley of the presence of the Shell truck; and (4) that Brinkley was guilty of contributory negligence as a matter of law.

It is, in effect, conceded that if there was no substantial evidence tending to show that defendant McDaniel stopped the Biscuit Company truck to give aid to the Shell truck, then plaintiff cannot recover against the Biscuit Company defendants. To support the claim that defendant McDaniel stopped the Biscuit Company truck for such purpose plaintiff relies principally upon the evidence of her witness Howard Williams. The contention is made that Williams' evidence is so confused and contradictory that it falls short of being evidence tending to show that McDaniel stopped to aid the Shell truck. Also, it is argued that if Williams' evidence, on the point, be considered substantial, such evidence was competent only as to McDaniel and was not competent as to the Biscuit Company.

In view of the challenge made upon the evidence of Williams, we set out his evidence somewhat at length. Williams testified that he lived at Crystal City, Missouri, and that on the morning of the collision he was going to Fredericktown and was picked up near Festus by Cecil Reed; that he and Reed were driving about 25 or 30 miles an hour and about a quarter of a mile north of the place of collision he ''heard a noise as we were driving south about nine or ten miles

south of Festus on highway 61. At the time we heard this noise we could not see anything. The weather was awful bad; you couldn't see very far in front of you. Mr. Reed had his lights on. As we were travelling south that morning just immediately after we heard the noise we couldn't hardly see anything in front; it was snowing so bad and the weather was so bad and dark and after—we had to slide our brakes to keep from hitting the Union Biscuit Company truck, which was sitting on the pavement at that time. It was stopped; I don't know how much was on the pavement. There was enough on the pavement that we had to drive between them. The United Biscuit Company truck was facing south. The Shell truck was on the pavement, facing north. . . . In passing between the Shell truck and the Union Biscuit Company truck he (Reed) drove sideways to keep from hitting the other truck. He did not drive straight south to go down the highway between them because the Union Biscuit Company truck was not in front of us. . . . As Mr. Reed and I drove up to the scene of the accident I didn't see any people there at all, but after we stopped two drivers came up. One came from each of the trucks. Q. Did you talk with those two men? A. Well, one man—I don't know which one it was—come from the Union Biscuit Company truck said he stopped . . . *to help the other fellow. He said he stopped to help the Shell truck"* (italics ours).

On cross-examination Williams testified that he and Reed drove about half a mile after they heard the noise before they reached the scene of the collision; that the first thing he remembered seeing was "a lot of stuff on the highway, pieces of wood and stuff like that between the trucks;" that Reed stopped his car "right in back of the Union Biscuit Company truck. He slid the brakes; he had to slide his brakes; he didn't want to hit the Union Biscuit Company truck. . . . After we stopped behind the United Biscuit Company truck I started to get out, and those fellows came over there. I got out on the fender part of the way, but no farther. Mr. Reed did not get out. Those fellows came and talked to me. I found out at that time that somebody was in the lumber truck hurt. Somebody asked Mr. Reed to get a doctor. I did not make inquiry how badly the men were hurt. One of the men said he knowed they were not breathing. The men must have been ▮▮▮ up to the lumber truck before I got there or they wouldn't have known that. I don't know whether they had left their truck and gone to the lumber truck before I got there. . . . The Biscuit Company truck was on the pavement, part of the way on the pavement. I don't remember whether the wheels on the right hand side were off the pavement, but I do remember some of it was on the pavement. I will say three-fourths of it was on the pavement. I do not know how wide the pavement is, or how wide the

truck of the Biscuit Company was. I could see that one side of the biscuit truck was swiped off''

The real meat of Williams' evidence is in the italics, and as to this part of the evidence of Williams, it can not be very well contended that there was such confusion and contradiction as to nullify his evidence. There was some confusion in his evidence concerning other matters, but not as to what defendant McDaniel said as to why he stopped.

Also, it appears from the evidence of Cecil Reed, with whom witness Williams was riding, that he and Williams stopped at the scene of the collision about even with the Shell truck and that Williams opened the door on the right side of the car and got out on the running board and that two men there talked to Williams, but that he did not hear what was said. Reed said that he lived at Sikeston; travelled for a St. Louis stationary house, and did not tarry at the scene because he was a witness that day in a case to be tried at Sikeston.

Defendant McDaniel testified that he did not tell Williams that he had parked his truck to aid the Shell truck. He said that he never saw Williams and had no conversation with him.

■ ''Where a party relies on the testimony of a single witness to prove a given issue, and the testimony of such witness is contradictory and conflicting, one version thereof tending to prove the issue, the other tending to disprove it, with no explanation of the contradiction, and no other fact or circumstance in the case tending to show which version of the evidence is true, no case is made, and the jury should not be permitted to speculate or guess which statement of the witness should be accepted. On the other hand, if, in such a case, the conflicting and contradictory statements of the witness are reasonably explained, or if there are other facts and circumstances in the case tending to show which story of the witness is true, and from a fair consideration of all the facts and circumstances in evidence a jury could reasonbly determine which statement of the witness should be accepted as true, then the credibility of the witness and the weight to be given to his testimony are questions for the jury.'' [Adelsberger v. Sheehy, 332 Mo. 954, 59 S. W. (2d) 644, l. c. 647.] We think that the credibility of witness Williams and the weight to be given his evidence were for the jury.

■ Was Williams' evidence as to what McDaniel said as to why he stopped competent as to defendant Biscuit Company? Whatever statement McDaniel made to Williams was made within a minute or two after the collision, and was, we think, as plaintiff contends, within the *res gestae* rule. [Sconce v. Jones et al., 343 Mo. 362, 121 S. W. (2d) 777, l. c. 781-782, and cases there cited.]

■ Was there substantial evidence that the Biscuit Company truck was stopped so close to the Shell truck that Brinkley did not have room to pass between the two trucks as submitted by plaintiff's

Instruction P1? McDaniel testified that he did not stop his truck; that as he approached the place of the collision he was travelling 25 or 30 miles an hour; that he saw two lights, and farther on south, he saw two more lights; that he could not tell whether the first two lights were on a vehicle that was standing or moving, but that he could tell the second pair of lights were coming towards him; that he noticed the second pair of lights "cutting out on the highway and at that time he was about 100 or 150 feet north of the first pair of lights; that he then pulled off the road to the right and onto the shoulder and applied his brakes; that "on account of the ditch on the side, I could not go any farther" (the ditch was 8 or 10 feet from the pavement). He further testified that he "moved along very slowly, probably between 5 and 10 miles an hour at the most, trying to keep traction and keep from sinking in the mud; that when Brinkley "began to cross the center line I applied the brakes and started off the pavement immediately. I went probably 14 feet, the length of the truck, before I got off. I drove about 85 feet after I got off." He said that the Brinkley truck "hit me and stopped me in my tracks. I did not move after I was struck. The drive shaft of my truck was knocked completely out." The cab of the Biscuit truck sustained but slight injury, but the left side of the truck was sheared off. If McDaniel was 100 feet (for plaintiff, the most favorable distance) from the Shell truck when he saw the Brinkley truck "cutting out on the highway" and then moved about 14 feet before he got on the shoulder, and drove only 85 feet after he got on the shoulder, then his truck stopped at a point somewhere nearly even with the standing Shell truck. At the coroner's inquest, McDaniel testified that he did not know whether the Brinkley truck hit his truck first, or hit the Shell truck first, and at the trial he said "I don't know now whether it (the Brinkley truck) hit the Shell truck first or my truck first." Witness Miles Reed testified that "the back of the Shell truck on the left hand side had been hit with the timbers on the Brinkley truck."

There was evidence that, after the collision, the Biscuit Company truck was 75 or 100 feet south of the Shell truck, and that the Brinkley truck was 25 to 40 feet north of the Shell truck. But in view of the evidence of Williams and of defendant McDaniel, it can not be said that there was no substantial evidence that the Biscuit Company truck stopped and that it stopped somewhere nearly opposite the Shell truck. And as appears, supra, the Shell truck occupied, after the collision, 6 feet of the east side of the pavement, and McDaniel said that the Shell truck, before the collision, was wholly on the pavement. The Biscuit Company truck occupied at least 2 feet of the west side of the pavement. As stated, the pavement was 18 feet in width. So it appears that the space east and west, between the Shell truck and the Biscuit Company truck, as the most favorable evidence

tends to show, was about 10 feet. And there was evidence tending to show that there were no lights at all on the Shell truck. Miles Reed testified that he never saw "any lights on the Shell truck. I examined that truck and found that it had a dead battery. I know a new battery was put in the truck. When that battery was put in the truck it started immediately."

"One who stops his vehicle and permits it to remain standing on the highway is bound to exercise reasonable care that it will not constitute a source of danger to other users of the highway." [42 C. J., p. 1007, Sec. 734. See also Smith v. Producers Cold Storage Co. (Mo. App.), 128 S. W. (2d) 299, l. c. 308; 2 Blashfield Cyc. of Automobile Law, pp. 322-323; Bradley v. Clarke, 219 Ky. 438, 293 S. W. 1082.] We rule that there was substantial evidence that the Biscuit Company truck was stopped so close to the Shell truck that Brinkley did not have room, etc., to pass between the two trucks as that question was submitted in plaintiff's Instruction P1.

Was there any duty on defendant McDaniel to warn Brinkley of the presence of the Shell truck? The claim that it was McDaniel's duty to so warn is based, of course, on the theory that he stopped his truck to render aid to the Shell truck, and that he stopped it so close, etc., to the Shell truck, as was submitted in plaintiff's Instruction P1.

In view of the evidence as to the purpose of McDaniel's stopping and where he stopped, and the position at the time of the Shell truck, without lights, and with his (McDaniel's) lights on, which would tend to prevent a driver coming from the south from seeing the Shell truck, as the evidence tends to show, and in view of the other conditions obtaining, there would be a jury case regardless of any duty to so warn. It was McDaniel's duty to stop his truck at a place where his lights would not have prevented approaching drivers from seeing the unlighted Shell truck. Surely the jury would understand that any duty to warn was based only upon a finding of these facts. [Snyder v. Murray, 223 Mo. App. 671, 17 S. W. (2d) 639, l. c. 644.]

Was Brinkley guilty of contributory negligence as a matter of law? The situation obtaining appears, supra, except as to the speed at which Brinkley was driving. The only evidence on that question was given by defendant McDaniel, who estimated that Brinkley approached at 30 or 40 miles an hour. Brinkley's alleged contributory negligence was submitted in Instruction 6D. This instruction told the jury "that at the time of the collision in question the law of this state provided that all motor vehicles, when in operation, should be kept as close to the right hand side of the highway as practicable, and that the operators of such motor vehicles, when attempting to pass a vehicle going in the same direction, should see that the way ahead is clear of approaching traffic, and required the operators of motor vehicles not to operate the same at a high and dangerous rate of speed under the conditions existing and to operate them

in such a manner as not to endanger the property of another or the life or limb of any person on the highway.'' And then the instruction directed a verdict for the Biscuit Company defendants if the jury found from the evidence ''that immediately prior to and at the time of the collision in question the plaintiff's husband was driving his motor vehicle on and along highway 61 in this state, and that plaintiff's said husband failed to keep his motor vehicle as close to the right hand side of the highway as practicable, if you find he did so, or if you find that plaintiff's husband attempted to pass another vehicle faced in the same direction while the way ahead was not clear of approaching traffic travelling from the opposite direction, if you find the facts so to be; or if you find that plaintiff's said husband, at said time and place, was operating his motor vehicle at a high and dangerous rate of speed under the conditions existing and at a rate of speed so as to endanger the property of another or the life or limb of any person on the highway, if you find the facts so to be; and if you further find and believe from the evidence that such acts, if any, of plaintiff's husband directly contributed to produce said accident and collision and the death of plaintiff's husband, then and in that event your verdict must be for the defendants, United Biscuit Company of America and James Francis McDaniel.''

A court should never withdraw a question from the jury unless all reasonable men, in the honest exercise of a fair and impartial judgment, would draw the same conclusion from the facts. Where there is uncertainty arising from a conflict in the evidence, or because the facts being undisputed fair minded men will honestly draw different conclusions, the question is not one of law but of fact for a jury. [Courtney v. Ocean Accident & Guaranty Corp., 346 Mo. 703, 142 S. W. (2d) 858, l. c. 860; Parrent v. Mobile & Ohio R. Co., 334 Mo. 1202, 70 S. W. (2d) 1068, l. c. 1073.]

No case is cited which supports the claim that Brinkley was guilty of contributory negligence as a matter of law. We think that, in the situation, the question of Brinkley's negligence was one for the jury.

Plaintiff's Instruction P1 is challenged on the grounds (1) that it submits facts without evidentiary support and is broader than the petition; (2) that it assumes that the Biscuit Company truck was stopped and parked on the highway; (3) that it is repetitious, confusing and misleading; (4) that it, without warrant of law, placed the duty on McDaniel to warn Brinkley; and (5) that it did not submit to the jury the question as to whether the facts hypothesized constituted negligence.

It will be observed that all facts hypothesized in the instruction are in the conjunctive, and such being the case, if there are facts submitted without evidentiary support, such could not have prejudiced the Biscuit Company. [Guthrie v. City of St. Charles (en banc), 347 Mo. 1175, 152 S. W. (2d) 91, l. c. 98, 99; Herrington v. Hoey et al.,

345 Mo. 1108, 139 S. W. (2d) 477, l. c. 483, and cases there cited.] It will be noted that one of the facts required to be found in Instruction P1 was that the Biscuit Company truck was stopped and parked in such a manner that its right side was not as near the right hand side of the highway as practicable. At the close of the whole case the trial court, at the request of the Biscuit Company defendants, gave their Instruction H, withdrawing from the jury for lack of evidentiary support, the allegation in the petition that these defendants ''carelessly and negligently failed to stop and park said truck with its right side as near the right hand side of the highway as practicable.''

The evidence shows that the Biscuit Company truck was 7 feet in width, and as appears, supra, it was stopped with at least 2 feet on the pavement, and Williams said at least three-fourths of it was on the pavement. The shoulder, under the most favorable evidence, was 10 feet in width. It also appears that the injury to this truck was the shearing off the left side. If there were only 2 feet of this truck on the pavement, it was from 3 to 5 feet from its west side to the ditch. In the situation, we do not think that these defendants were entitled to withdrawal Instruction H, and that the court rectified the mistake in Instruction P1. Also, as appears, supra, all facts hypothesized in Instruction P1 were submitted in the conjunctive. We might state that counsel for plaintiff, in the brief, say that when Instruction P1 was given they were not ''aware of the fact that the court had given instruction H.''

The italicized part, supra, of Instruction P1 is the part which the Biscuit Company defendants say assumes that their truck was stopped and parked on the highway. Prior to the alleged assumption the instruction clearly required the jury to find that the truck was so stopped and parked. Of a similar situation in Koonse v. Mo. Pac. R. Co., 322 Mo. 813, 18 S. W. (2d) 467, l. c. 473, the court said: ''Moreover, prior thereto in the instruction, those facts were summarized and the jury required to find them. This assumption of fact, if it was an assumption, merely directed the jury's attention to facts that a prior portion of the instruction required them to find before plaintiff could recover.''

Instruction P1 is somewhat repetitious, but no more so than defendants' Instruction 6D, supra, when considered with 5D. We do not think that the repetition prejudiced the Biscuit Company defendants. Nor do we think that the instruction is so confusing and misleading as to justify reversal. In ruling, supra, the Biscuit Company defendants' demurrer to the evidence, we ruled the question as to McDaniel's duty to warn.

Was it error to fail to submit, in Instruction P1, the question as to whether the facts hypothesized therein constituted negligence? On this point the Biscuit Company defendants cite Linderman et al. v. Carmin, 255 Mo. 62, 164 S. W. 614; Magrane v. St. Louis &

Suburban Ry. Co., 183 Mo. 119, 81 S. W. 1158; Ducoulombier v. Baldwin et al. (Mo. App.), 101 S. W. (2d) 96; Roberts v. Kansas City Ry. Co., 204 Mo. App. 586, 228 S. W. 902; Stewart v. St. Louis Public Service Co. (Mo. App.), 75 S. W. (2d) 634; State ex rel. Long v. Ellison et al. (banc), 272 Mo. 571, 199 S. W. 984. A review of these cases would unduly extend an already too lengthy opinion.

In State ex rel. Long v. Ellison, supra, the court used this language [272 Mo. l. c. 581]: "The basis of this action is negligence. In such cases there are but two possible theories to be adopted by the trial court when such court comes to instructing the jury, and they are (1) the trial court may say that if the jury find that the defendant did certain things, or omitted.to do certain things, then such act or acts of the defendant would constitute negligence as a matter of law, and (2) the trial court could say to the jury that if the jury found that the defendant had done or had omitted to do specified acts, and that the doing of such things, or the failure to do such things, was negligence, as negligence was elsewhere defined, then the jury should find for the plaintiff. In other words the court might declare that the proven acts constituted negligence, or it might submit such acts to the jury, and let the jury determine the question of negligence or no negligence."

In the Ducoulombier case, supra, the Springfield Court of Appeals [101 S. W. (2d) l. c. 102] ruled that "unless the negligence pleaded consists of the violation of an ordinance or statute, making it negligence per se, then it is error to tell the jury that certain acts constitute negligence. If the negligent act complained of is a violation of a statute or ordinance, it constitutes negligence per se, and it might not be error to tell the jury that such breach or violation was negligence. However, as to pleaded acts of negligence which are not a violation of a statute or ordinance, it is a comment and is a usurpation of the functions of the jury to tell the jury that if they find such acts, one or other of the parties to the suit would be guilty of negligence." Such ruling, we think, is too restricted. It will be observed by reference to the case that no authority is cited. And we might say that the ruling was not followed by the same court in the later case of Wheeler v. Breeding (Mo. App.), 109 S. W. (2d) 1237.

. On the point in hand plaintiff cites Oglesby v. St. Louis-San Francisco R. Co., 318 Mo. 79, 1 S. W. (2d) 172, l. c. 178-9; Wheeler v. Breeding (Mo. App.), 109 S. W. (2d) 1237, l. c. 1243; Prash v. Wabash R. Co., 151 Mo. App. 410, l. c. 414-5, 132 S. W. 57; Borowski v. Loose-Wiles Biscuit Co. (Mo. App.), 229 S. W. 424, l. c. 426; State ex rel. Greer v. Cox et al. (Mo. Sup.), 274 S. W. 373, l. c. 375-6; Munden v. Kansas City, 225 Mo. App. 791, 38 S. W. (2d) 540, l. c. 544-5; Luckel v. Century Bldg. Co., 177 Mo. 608, l. c. 630, 76 S. W. 1035; McCaffery v. St. Louis & Meramec R. Co., 192 Mo. 144, l. c. 155, 90 S. W. 816; Benoist v. Driveaway Co. of Missouri (Mo. App.), 122 S. W. (2d) 86, l. c. 90.

1246

In the Luckel case, supra [177 Mo. 1. c. 630], the court said: "Negligence is ordinarily a question of fact for a jury, but it is not correct, as counsel assume to say, that a court can never instruct a jury that a certain line of conduct is negligence. The courts are almost daily called upon to declare as a matter of law that the plaintiff's concurring or contributory negligence bars his recovery, and the courts constantly instruct the jury that from certain facts a certain legal consequence follows. When reasonable men may fairly differ on the question the courts do not assume to decide as a matter of law that certain facts constitute negligence, but the proper conclusion to be drawn from a conceded state of facts, admitting of but one inference, is a question of law."

 The salient facts submitted in Instruction P1 are that the Biscuit Company truck was stopped and parked in such manner that its right side was not as near the right hand side of the highway as practicable; that it was stopped so close to the Shell truck that Brinkley did not have room to pass, etc.; and that McDaniel failed to warn Brinkley of the presence of the Shell truck. Subdivision (a) of Sec. 8385, R. S. 1939, Mo. R. S. A., Sec. 8385, provides: "All vehicles not in motion shall be placed with their right sides as near the right-hand side of the highway as practicable, except on streets of municipalities where vehicles are obliged to move in one direction only."

In the brief counsel for the Biscuit Company defendants say that "there are numerous cases decided by the appellate courts of this state where it has been held proper for the court to instruct the jury that if they found certain facts they should return a verdict for the plaintiff, but an examination of all these cases discloses that the court was dealing in each case with a situation where the negligence charged was the violation of a statute, an ordinance, or some positive rule of law, or a violation of some duty existing as a matter of law, at all times, such as a continuous lookout, or cases where the facts are conceded." Under the conditions existing, at the time, if McDaniel stopped the Biscuit Company truck so close to the Shell truck, etc., and failed to warn, he was guilty of negligence. We do not think that fair and reasonable minds would disagree. [See Swain v. Anders et al., 349 Mo. 963, 163 S. W. (2d) 1045.] It is our conclusion that there was no reversible error in plaintiff's Instruction P1.

 It is argued that plaintiff's instructions P4 and P5 are erroneous because they "gave the jury a roving commission to find for the plaintiff" and because of the use of the term proximate cause. Instruction P4 told the jury that even though they found that Brinkley did not use the highest degree of care for his own safety, "yet you can not find against the plaintiff in this case on account thereof unless you further find that such failure of said Ora A. Brinkley to use the highest degree of care for his own safety contributed to and was one of the proximate causes, or was the only proximate cause, of the accident which resulted in his death."

Plaintiff's Instruction P5 told the jury that "upon this issue (contributory negligence) you are instructed that the burden of proof is upon the defendants to prove such contributory negligence, if any, on the part of the said Ora A. Brinkley and that such contributory negligence, if any, was a proximate cause of the death of Ora A. Brinkley by a preponderance of the evidence before you are warranted in finding for the defendants on that issue, unless you find that the evidence offered by the plaintiff shows that Ora A. Brinkley was guilty of contributory negligence and that such contributory negligence, if any, was a proximate cause of his death."

Instruction 6D, supra, quite clearly told the jury what negligence on the part of Brinkley would defeat recovery, and it is not likely that the jury was confused or did any "roving" because of Instruction P4.

In Maloney v. United Rys. Co. (Mo. Sup.), 237 S. W. 509, it was claimed that the jury was mystified by the use of the word "proximate" in an instruction. In ruling the point the court said [237 S. W. l. c. 515]: "Upon examination of the authorities cited by appellant in support of its contention we do not find that any of them are applicable to the facts of this case. If said instructions 2 and 5 had not been limited by the words 'direct and proximate result,' or some similar words, the defendant would, more than likely, be here strenuously insisting that the jury had been turned loose with a roving commission, to fix their own standard of defendant's liability, etc. To hold that the jurors might have been 'mystified' by the language used in above instructions would be equivalent to holding that they were lacking in ordinary intelligence. If counsel was fearful that the jurors might be misled by the language above quoted, he should have asked an instruction defining his own theory of the law on that subject."

We find no reversible error in plaintiff's case against the Biscuit Company defendants, and the judgment as to these defendants should be affirmed, and it is so ordered.

All the assignments of consequence made by the Shell defendants are, in effect, ruled, supra, in disposing of plaintiff's case against the Biscuit Company defendants, except the assignment on the refusal of Instruction 11D, and this assignment is interrelated to what may be termed the Shell defendants' demurrer to the evidence. Instruction 11D reads as follows:

"The court instructs the jury: If you find and believe from the evidence that the drivers of the Shell truck were unable to remove the same from the highway after it ceased to operate (if you so find), but find that they used reasonable diligence in taking steps toward having it removed, and that a red tail light thereon was burning at the time of and immediately before the collision in question, then your verdict must be against plaintiff and in favor of defendants I. H. Shell, Lee Shell and Claud Myers."

In the brief the Shell defendants say: "As against the Shell defendants, one of the specific assignments of negligence in the petition was that they 'failed to stop and park said truck with its right side as near the right hand side of the highway as practicable.' Another specific assignment was that they 'failed to drive said motor vehicle off of the paved part of said highway and on to the shoulder thereof before stopping the same.' It is conceded that the Shell defendants went upon the highway with a dead engine, and they say that their truck coasted to a position where it was impossible for them to move it immediately, and that they did not park it or stop it, but that it stopped itself. And that there was, therefore, a fatal variance between the pleadings and the proof, the plaintiff having pleaded one act of negligence, namely, parking and stopping the truck, and having proved another, namely, having gone upon the highway with a dead truck which they could not immediately move once it had stopped itself."

Instruction P2, supra, shows the facts upon which plaintiff submitted her case against the Shell defendants, and it does not appear that the alleged failure to drive the Shell truck off the paved portion of the highway was submitted. On what occurred after the attendant at the Ponzer station ceased pushing the Shell truck defendant Myers testified:

"When he turned us loose our motor didn't start, but the truck kept going. There was a slight grade and I thought there would be some chance of its starting, but it didn't start. I saw that the truck was not going to start, so I proceeded to get it off the highway, on the right or east side of the pavement, and due to the soft roadbed or shoulder I didn't get it clear off the highway until it bogged down and stopped in the mud. The shoulder was very soft. It was impossible to go farther in the soft mud because the truck had no power; the mud stopped it. When it stopped I had at least two wheels on the right side of the truck off the pavement."

Myers went out on the highway with a dead engine and took the chance of being able to get his truck off the pavement in the event his engine did not start. And such being so he was as much responsible for being unable to get the truck off the pavement as if the engine had been running and he had stopped the truck. As appears, supra, there was evidence that the Shell truck was wholly on the pavement. Also, there was evidence, other than that of Myers, that it was part on and part off the pavement. Also, the jury was not bound to believe what Myers said as to the stopping of the truck.

The judgment against the Shell defendants should also be affirmed, and it is so ordered. *Hyde* and *Dalton, CC.*, concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.