EVELINE B. BILLINGSLEY, v. KANSAS CITY PUBLIC SERVICE COMPANY, A CORPORATION,—191 S. W. (2d) 331

Kansas City Court of Appeals. November 5, 1945.

442

*Charles L. Carr, Hogsett, Trippe, Depping & Houts* for appellant.

444

*Trusty & Pugh* and *John W. Hudson* for respondent.

446

DEW, J.—We have previously rendered a decision in this cause, the same being reported in 181 S. W. (2d) 204, but not yet officially reported. Thereafter on *certiorari*, the Supreme Court of Missouri quashed that opinion in part by its decision in Case No. 39209, entitled "State of Missouri, ex rel. Kansas City Public Service Company, a corporation, Relator, v. Ewing C. Bland et al., Judges of the Kansas City Court of Appeals, Respondents, and Eveline B. Billingsley (Mrs. Eveline B. Broadston) Party to be Adversely Affected",

reported in 187 S. W. (2d) 211, but not yet published. We herewith rewrite our opinion in the cause to conform to the said decision of the Supreme Court.

This is a suit for damages growing out of a collision between an automobile in which plaintiff, Eveline B. Billingsley, was riding as a guest, and a street car owned and operated by defendant, Kansas City Public Service Company. Verdict and judgment in the sum of $4800 was for plaintiff and defendant appealed.

The record herein consists of more than 600 pages. It will make this opinion too long to set out the evidence in detail but it will be necessary to set it out rather fully in order to rule the many questions involved, including defendant's contention that its demurrer to the evidence should have been sustained.

The collision occurred at about 3:30 A. M. at a point on Meyer Boulevard in Kansas City, where it is intersected by defendant's Country Club line, about 600 feet south of 63rd Street. Meyer Boulevard is seventy-six feet wide from curb to curb at the point of intersection, because the curbing there on the south side of Meyer curves to form an arc with an intersecting street; but it is fifty feet wide west of said intersection. The parking between the curb and the sidewalk is twenty feet wide. Meyer is an east-west street and the car line is a north-south line. Defendant's street car was proceeding southward and the automobile in which plaintiff was riding was proceeding eastward at the time the collision occurred.

Plaintiff offered testimony tending to prove that she and a Mr. Majors were, at the time of the collision, riding in the rear seat of an automobile owned and operated by Mr. Childers, whose wife was riding in the front seat with him; that the two couples had been to Mary's Place for lunch, after having attended a Sunday School dance earlier, and were on their way home; that Childers slowed the automobile to a stop, or virtually stopped, changed gears and turned eastward from Wornall into Meyer, 327 feet west of the scene of the collision; that immediately after turning into Meyer the automobile was proceeding at a rate of speed of ten miles per hour but continued to gain in speed until, as it approached the intersection, its speed was estimated to be from twenty to twenty-five miles per hour.

It had been raining and mist was falling. The windshield wiper was in operation and there were beads of moisture on the windows and windshield except where the wiper operated. The brakes on the automobile were in good condition. Childers had good eyesight and hearing, was an expert driver, and was looking straight ahead as he drove, in approaching the crossing, and was driving slowly and carefully. Mrs. Childers was turned sidewise to the left, somewhat toward the driver, and was talking to the rear seat occupants. Neither she nor plaintiff saw the street car prior to the collision, but that Mrs. Childers saw the lights shining on her husband's face at about

the instant of collision. All occupants of the automobile were instantly rendered unconscious. Childers later died from injuries so received. There is no testimony from him in the record, and Majors was unable to remember anything about the collision or the attendant circumstances.

There was testimony to the effect that the street car entered the intersection, without slowing its speed or giving any warning, at from twenty to thirty miles per hour; that its front end was past the middle of the intersection when the hood of the automobile was directly in its path, at which time the gong was sounded and the brakes applied; that defendant maintained a "slow" sign at this crossing, swung over the tracks, and that it meant for operators of street cars to proceed at a reasonable rate of speed for the safety of defendant's employees, passengers and property, and of others; that there was sand on the tracks (from the brakes of the street car) extending from a point fifteen feet south of the north curbing of Meyer, southward to the street car; that when the street car is put in "emergency" sand is immediately and automatically applied to the rear wheels as well as the front; that the street car is forty-eight feet long and, upon application of emergency brakes, could have been stopped within a distance of from twenty-four to forty feet if traveling at a speed of twenty miles per hour, and from thirty to fifty-five feet at twenty-five miles per hour; that the automobile was struck about in the center of its left side and pushed forward a distance of fifty-three feet, up the track; that after the accident it was upright with its front wheels east of the track and its rear wheels west; that the left side was caved in about eighteen inches and the front seat was pushed out that distance through the opposite door.

A Mr. Whitehead and a Mr. Siek testified that they drove in a car to the scene of the collision, and were the first to arrive Whitehead testified to the effect that Mr. Best, defendant's motorman, had just alighted from the street car and was walking towards the intersection and that they met and talked to him when he was about ten feet from the south end open door of the street car; that the motorman asked them to report the accident to the police and defendant company, and to call an ambulance; that the motorman told them that he did not see the automobile until he was upon it. Mr. Siek testified, by deposition, that as the automobile in which he and Whitehead were riding neared the street car, "the motorman was standing on the steps flagging to our car to stop;" that he and Whitehead got out of their car and talked to the motorman, and the motorman asked them to report the accident to police at 63rd Street; that the motorman told them that the car approached at a rapid rate of speed and "that it was almost on the track before he saw it." Their evidence was to the effect that this conversation occurred immediately after the collision, before the police arrived and before the automo-

bile had been moved or anyone had looked inside of it. Defendant objected to the introduction of testimony relative to the above statement and the motorman denied making said statement.

Defendant contends that the court erred in admitting the statement alleged to have been made by the motorman to Siek and Whitehead. The circumstances attending at the time the statement was made, renders the statement admissible in evidence as a part. of · the *res gestae*. [Smith v. Producers Cold Storage Company (Mo. App.), 128 S. W. (2d) 299, 1. c. 306, 307; Brinkley v. United Biscuit Company, 349 Mo. 1227, 164 S. W. (2d) 325, 1. c. 330.] The circumstances under which this statement was made are unlike those in Sconce v. Jones, 343 Mo. 362, 121 S. W. (2d) 777, 1. c. 780. State v. Hayes (Mo.), 247 S. W. 165; Cramer v. Parker (Mo. App.), 100 S. W. (2d) 640; Redmon v Metropolitan St. R. Co., 185 Mo. 1, 1. c. 7, 84 S. W. 26, 105 Am. St. Rep. 558. The trial court has some discretion which he may exercise in ruling evidence on the theory of *res gestae* and he did not abuse his discretion in admitting the testimony. [Woods v. Southern R. Co. (Mo.), 73 S. W. (2d) 374, 1. c. 377; Smith v. Producers Cold Storage Co., *supra*.]

Plaintiff testified to the effect that each member of her party, including the driver, had had one whiskey highball at about 9 P. M., but she offered positive evidence tending to prove that they had drunk no other intoxicating liquor during the night, and many witnesses testified that the driver was not intoxicated.

Defendant's motorman testified to the effect that after leaving 63rd Street he increased speed up to 23-24-25 miles per hour; that as the street car approached Meyer he cut off the power and coasted; that he sounded the gong a number of times before entering the intersection; that the speed of the street car as he entered Meyer was twenty miles; that as he passed the north sidewalk along Meyer (which is about sixty feet from the enter of Meyer) he saw the automobile at a point about 250 feet west of the tracks; that he observed nothing out of the ordinary about it at that time and continued to observe it; that when the front of the street car was fifteen feet out in Meyer the automobile was 150 feet west, coming at a speed of forty-five to fifty miles per hour, and he realized that the automobile was not going to stop; that he then threw the brakes of the street car into emergency stop position; that it thereafter traveled southward some thirty feet, slowing down as it went, before striking the automobile, which was a few feet south of the center line of Meyer, and that when the collision occurred the air line broke and the automobile eventually stopped the street car.

A passenger on the street car stated that he had walked towards the front of the car and had stepped down into the vestibule, near the motorman, when he saw the hood of the automobile directly in front of the street car; that the front of the street car was then

south of the center line of Meyer; that he realized there would be a collision and jumped into the air and turned toward the back of the street car; that the motorman, at that instant, while witness was in the air, sounded the gong and applied the brakes; that witness could not have seen the automobile sooner than he did because of his position in the street car.

The demurrer was properly overruled if a submissible case was made on any theory pleaded. [Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S. W. (2d) 91, l. c. 94.] The jury could have believed from the evidence that defendant's motorman first saw the automobile when it was 250 feet west of the tracks and when the front of the street car was opposite the sidewalk, which was more than fifty-five feet from the center line of Meyer and probably sixty feet from the point of impact; that he observed its speed and approach and did nothing to slow down the street car or to give any warning; that when it was 150 feet from the tracks he realized that it was not going to stop, that the occupants were apparently oblivious of the approach of the street car, and that a collision was imminent unless he acted to prevent it; and that he observed the automobile as it approached the crossing in a straight line and at an increasing speed, until its hood was directly in front of the street car, at which time the front of the street car was south of the center line of Meyer and too close to avoid the collision, before taking any action whatever to avoid it. In any event, the jury could have believed, from the evidence, including pictures of the intersection, that the motorman, if he had looked, could have seen the automobile proceeding in such a manner as to indicate, as he said it did, that it would not stop, in ample time to have stopped the street car before the collision, or to have applied the brakes and have slowed its speed sufficiently to have permitted the automobile to have proceeded seven or eight feet further, to safety, all with safety to the street car, himself and his passenger. Therefore, a submissible case was made under the humanitarian theory.

It is contended that, since humanitarian negligence as submitted under Instruction No. 3 was submitted on aternative theories of negligent failure to stop or negligent failure to slacken speed, there must have been substantial evidence to support both such theories else said instruction is erroneous. The evidence was sufficient to submit either theory.

Plaintiff's Instruction No. 3, submitting the case on the humanitarian theory, contained the following language:

"If you so find from the evidence in accordance with the above instruction, then in rendering your verdict under this instruction you will totally disregard the use of any liquor that night by Mr. Childers or any other person in the automobile".

Defendant contends that it was error so to instruct because its instruction K was to the effect that if the jury believed that the

collision was caused directly and solely by the negligence of the driver of the automobile plaintiff could not recover.

Defendant, in its answer, pleaded three grounds of contributory negligence, one of which was that of negligently riding in an automobil with the driver intoxicated. There was evidence to the effect that each of the persons in the automobile had had one highball some six hours prior to the wreck; that there were two bottles of whiskey in the car after the wreck, one of which was broken, apparently in the collision; that there was an odor of whiskey in the car and on Childer's breath; that ice and mixer (no alcoholic beverage) were placed on the table of plaintiff's party at Mary's Place; and that some of the party there mixed a drink out of a bottle, but no evidence as to who did it. There was no direct evidence that any liquor was consumed by any of the persons either at Mary's Place or elsewhere, excepting the one highball. Defendant did not submit any instruction specifically on the question of the driver's intoxication, nor on plaintiff's alleged contributory negligence in riding with an intoxicated driver.

It cannot be said, as a matter of law, that there was no substantial evidence that the driver of the automobile was intoxicated at the time in question. In so determining, we must apply the rule that only the evidence most favorable to the defendant's contention must be considered. [Rothe v. Hull, 352 Mo. 926, 180 S. W. (2d) 7; Steinmetz v. Nichols, 352 Mo. 1047, 180 S. W. (2d) 712; Bootee v. Kansas City Public Service Co. (Mo.), 183 S. W. (2d) 892.] The weight of the testimony on this subject hereinbefore stated, and the findings thereon were matters that could be determined only by the jury.

Neither can it be said, under the evidence, as a matter of law, that plaintiff was unaware of the above facts pertaining to the alleged intoxication of the driver. She was at all times in question one of the party of four of which the driver was one; was present while the party was together throughout the evening and into the following morning to the time of the collision, and the jury might conclude from the evidence that she had opportunity to know and did know the facts in evidence pertaining to Mr. Childer's intoxication, if true. Her knowledge or lack of knowledge of his intoxication, if he was intoxicated, was a matter determinable only by a jury. As stated, plaintiff's Instruction No. 3, submitting her case on the humanitarian theory, told the jury that if they found the defendant negligent thereunder, and that same directly resulted in the injury to plaintiff, they should "totally disregard the use of any liquor by Mr. Childers, or any other person in the automobile".

It has been held that evidence of intoxication of the driver of an automobile in which an injured plaintiff was riding is admissible under the *res gestae* rule, and that such fact, while it constitutes no

defense to a charge of humanitarian negligence, is a fact which the jury may consider in determining whether or not the negligence of a driver was the sole cause of the collision and injuries. [Wallace v. St. Joseph Ry. Light, Heat & Power Co., 336 Mo. 282, 77 S. W. (2d) 1011, l. c. 1013.]

Appellant here, on two grounds, asserts that this Instruction No. 3 was prejudicially erroneous in so excluding from the consideration of the jury the use of liquor by the driver, Childers, and other occupants of the automobile. One ground assigned is that the intoxication of plaintiff's driver, if a fact, would be material upon the issue of the duty of the defendant's motorman, and the liability of the defendant under the humanitarian doctrine submitted. The second objection is that the exclusion renders the instruction in conflict with the defendant's sole cause Instruction K. Defendant's Instruction. K, in effect, told the jury that if they found from the evidence no negligence on the part of the defendant under the instructions, but that plaintiff's injuries were caused solely by the negligence of the driver in carelessly failing to keep a reasonably careful lookout for the approach of the street car, and carelessly driving his automobile at a high and dangerous rate of speed into collision with the street car, the verdict should be for defendant. Defendant, of course, denies any negligence on the part of its operator. For plaintiff to recover under the humanitarian doctrine, she must establish the negligence of the defendant as submitted by her Instruction No. 3, but she cannot recover if her injuries were caused solely by any negligence of the driver of the automobile in which she was riding, as submitted by defendant's Instruction K. In order for the jury to determine the issues submitted under the sole cause Instruction K, the jury should be permitted to consider the testimony in evidence aforesaid' pertaining to the alleged intoxication of the driver of the automobile. Such evidence was also essential for the jury to determine the negligence of the defendant's street car operator under the circumstances in evidence, under the humanitarian theory, and under the instruction thereon.

In Wallace v. St. Joseph Ry. Light, Heat & Power Co., *supra,* in an action to recover for the death of the deceased driver of an automobile under the humanitarian rule, evidence tending to prove his intoxication at the time of the collision had been admitted by the trial court, and later a new trial granted because of its admission. On appeal the Supreme Court held the admission of the evidence in the first place was proper and said at page 287, 288:

"Until there was something which the bus driver observed or should have observed in the movement of the automobile or the actions and conduct of its driver to indicate that the automobile driver was oblivious or heedless of the proximity of the bus, the bus driver had a right to presume that deceased would not drive heedlessly into the

bus, which was in the intersection before the deceased reached it. And the jury may well have found that deceased would not have done so had he been sober and in full possession of his faculties. His intoxication and consequent unfitness to drive an automobile, if a fact, his heedlessness of danger to himself and others which often results from intoxication, these as well as the manner in which he actually did drive, are facts and circumstances attending and entering into the happening of the collision, the event out of which the claimed cause of action arose, and tending to explain it.

. . .

"His intoxicated condition, if a fact, tends to explain his otherwise seemingly inexplicable conduct in driving headlong into the side of the bus and tends to sustain defendant's contention that deceased's own act was the sole cause of the accident."

We rule, therefore, that the issue of the alleged intoxication of the driver of the automobile should not have been excluded from Instruction No. 3 for the reason that such evidence was material to the jury's consideration of the duty and conduct of the operator of the street car under the circumstances, upon a charge under the humanitarian doctrine.

We believe further that the said excluded testimony in Instruction No. 3 should have been submitted to the jury therein for its consideration therewith of the sole cause Instruction K, and that it was prejudicial error so to exclude the same. We so rule.

It is contended that it was error to give plaintiff's Instruction No. 1, which authorized a verdict on a finding of negligent failure of defendant's motorman to keep a lookout, because there was no evidence to support such a finding. The motorman testified to the effect that he was able to see and did see to the west on Meyer as he aproached and entered the intersection. There was other evidence tending to prove that he could have seen the car coming from the west if he had looked; but he told Whitehead and Siek that he did not see the car until he was upon it; that it was almost on the track before he saw it. It was the motorman's duty to maintain a lookout for oncoming traffic. [Weishaar v. Kansas City Public Service Company (Mo. App.), 128 S. W. (2d) 332, l. c. 343.] Defendant recognized that it was the motorman's duty to keep a lookout and offered evidence tending to prove that he did so. It offered a number of instructions wherein lookout, as a duty, was assumed. It is, therefore, estopped to say there was no such issue made under the pleadings and evidence. [Schinogle v. Baughman (Mo. App.), 228 S. W. 897, l. c. 899.]

It is further urged that Instruction No. 1, as worded, is erroneous, because of the following language:

". . . it was the duty of the operator of the street car to keep and maintain a *reasonably sufficient* lookout and to do so in an effort

to discover and avoid danger of a collision with other vehicles. . . . " (Italics ours.)

The language is criticized because of the use of the expression "reasonably sufficient" lookout which, it is urged, lays on defendant an *absolute* duty to discover and avoid danger of collision with other vehicles. Defendant was not required to maintain such a lookout as would result, absolutely, in discovery of and avoidance of collision. [Hunter v. American Brake Company (Mo. App.), 231 S. W. 659, l. c. 664.] However, the language here used did not impose upon defendant such an absolute duty, but only the duty to maintain a reasonably sufficient lookout *in an effort* to discover and avoid danger of collision. While the instruction could have been so drawn as to have rendered this discussion unnecessary, the instruction is not erroneous on that ground. [See Schinogle v. Baughman (Mo. App.), 228 S. W. 897, l. c. 900.]

The instruction told the jury that if it found that the injuries were directly caused by "negligence . . . of the driver of the automobile, no matter how great, and such negligence, if so, of the defendant, in any degree, concurred and directly combined and cooperated in causing the collision . . .," it should find for plaintiff. Objection is made that it submits degrees of negligence and causal connection. The instruction deals with the question of the concurring negligence of the driver of the automobile and of the defendant. [Hollister v. A. S. Aloe Co., 348 Mo. 1055, 156 S. W. (2d) 606, l. c. 609.] It was appropriate because plaintiff was a guest riding in the automobile of Childers, and in that respect it did not conflict with defendant's sole cause instruction. [Kick v. Franklin, 345 Mo. 752, 137 S. W. (2d) 512, l. c. 515.]

It is further contended that Instruction 1 authorized a verdict for plaintiff as for primary negligence, without submitting the defense of contributory negligence of plaintiff in riding in an automobile with an intoxicated driver.

Defendant's Instruction M, on contributory negligence, instructed the jury on the duty of plaintiff to use ordinary care for her own safety, and that if the jury found from the evidence that plaintiff did ride in the automobile while it was driven at a high and negligent rate of speed without warning the driver, or making objection to him, and if she could, by the exercise of ordinary care, have seen the street car approaching in time to have warned the driver, and to have avoided the collision, and negligently failed so to do, and that such negligence, if any, on her part contributed to the collision, then the plaintiff could not recover under Instruction No. 1 (which submitted plaintiff's case on the theory of failure of the defendant to keep a sufficient lookout, with or without the concurrence of the negligence of the driver of the automobile), or under Instruction No. 7 (which submitted plaintiff's theory of excessive rate of speed

with or without the concurring negligence of the driver of the automobile), and in such case plaintiff could not recover even though the jury believed from the evidence that the street car was being driven at a negligent rate of speed, or that the operator sounded no gong of its approach.

The general rule is well established that an instruction on the whole case authorizing a verdict for plaintiff on primary negligence, but which ignores defendant's defense of contributory negligence, supported by substantial evidence, is prejudicial and erroneous. [Pence v. K. C. Laundry Service Co., 337 Mo. 930, 59 S. W. (2d) 633, l. c. 636.] It is true that Instruction No. 1 submits plaintiff's whole cause on the primary negligence of failure to keep a lookout, and authorized a verdict for plaintiff, and did not submit the issue of the pleaded contributory negligence of the plaintiff in riding in an automobile driven by an intoxicated driver. But defendant undertook to instruct the jury on contributory negligence, and offered its Instruction M, which the court gave. It is made specifically to apply to plaintiff's Instructions 1 and 7. While Instruction 1 omitted the plea referred to, Instruction 7 contained the following words:

". . . and this would be so even if you found from the evidence that Mr. Childers was to any extent under the influence of liquor and that such was a contributing or concurring cause with such negligence, if so, of said defendant."

It will be noted that said Instruction M, given at the request of the defendant, submitting its specifications of contributory negligence under the evidence, did not include any reference to any negligence of the plaintiff in riding in an automobile while the driver was intoxicated.

The general rule announced in the Pence case, *supra,* has its exceptions. In Denkman v. Prudential Fixture Company, 289 S. W. 591, all of plaintiff's instructions had specified but one ground of negligence and referred to no other. An instruction for the defendant referred only to the same assignment of negligence, and the plaintiff on appeal complained that defendant's instructions made no reference to any other assignment of negligence. The Supreme Court said, l. c. 596:

"If plaintiff thereby waives submission of the omitted issues, why should the trial judge, in submitting other instructions, consider that such issues are any longer in the case? Having thus sought to instruct on his own case, and having stood mute as to any other ground, while defendant asked and received the above instruction presenting this theory of defense, plaintiff should not now be permitted to convict the trial court of misdirection. We so ruled in Nahorski v. St. Louis Electric Terminal Ry. Co. (Mo.), 274 S. W. 1025, and on principle the precedent appears to be sound. . . . If such candid evasion of duty is to be thus sharply condemned, though we have

not yet held that its indulgence constitutes reversible error, how can we look with favor upon a complaint of the misdirection in the court's failure to regard a theory of the case which counsel themselves have omitted from their own charge to the jury on the case? Whether such omission in any case is, in fact, intended as an abandonment of such theory, or whether it is prompted by laziness, laches, or guileful design, when the trial court acting thereon gives other instructions treating the omission as an abandonment, plaintiff will not thereafter be heard to say that the jury should have been permitted to consider such theory''.

It was also said in Pyle v. McNealy, 62 S. W. (2d) 921, l. c. 922, by the Springfield Court of Appeals:

''Defendant asserts that he pleaded contributory negligence on the part of plaintiff in four particulars, i. e.: (1) That plaintiff was driving her car at a dangerous rate of speed; (2) that she failed to keep a vigilant watch; (3) that she drove her car to the left of the center of the highway; and (4) that she saw or could have seen defendant's truck in time by the exercise of the highest degree of care to have avoided the accident. As heretofore indicated, defendant was given instructions covering plaintiff's alleged negligence under charges 1 and 3, but no instructions were asked or given covering charges 2 and 4. Defendant admits that, as to charges 1 and 3, the giving of instructions on the part of defendant submitting those issues cured any error in plaintiff's instruction No. 1 in ignoring said charges of negligence. It is argued, however, that, since charges Nos. 2 and 4 were not covered by defendant's instructions, error in regard thereto in plaintiff's said instruction was not cured. . . . ''

The court further said:

''To our minds defendant should be presumed to have abandoned those defenses not submitted, where he does submit by instructions some of said defenses. That rule has been applied to plaintiff under like circumstances, and we perceive no sound reason why the same rule should not be applied to defendant.'' [See, also, Studt v. Leiweke, 100 S. W. (2d) 30; Zambruski v. Ludewig, 110 S. W. (2d) 825, l. c. 826, and Hill v. Landau, 125 S. W. (2d) 516, l. c. 519.]

We think that since defendant itself omitted the specification of contributory negligence referred to, it cannot complain that plaintiff's Instructions 1 and 7 did likewise.

However, defendant makes the further and pertinent objection to Instruction 7, to-wit: that the ''extent'' to which the driver of the automobile was intoxicated, if any, was material to the defense that his negligence was the sole cause of the accident, and that it was error to eliminate it from the instruction on the primary negligence of the speed of the street car. We believe this objection well taken. [See Wallace v. St. Joseph R. L. H. & P. Co., *supra.*] Such evidence for such purposes was proper for the jury under Instruction 7, and

should not have been excluded. This is not to be confused with the further plea that *plaintiff* was guilty of contributory negligence in riding with an intoxicated driver, not contained in Instruction 7, but abandoned or waived, as we have held, by the failure of the defendant to submit it in its own Instruction M on contributory negligence.

Appellant, under subhead A of its Point V, further criticizes Instruction 7, but such criticism has heretofore been considered in connection with the other points raised and are ruled against defendant.

Finally, it is contended that Instructions 1, 3, and 7 are erroneous because misleading and confusing. While they may be somewhat verbose, each of them submits a different issue, and we cannot say they are confusing or misleading, except Instructions 3 and 7, in the respects hereinbefore set forth.

For the reasons stated, the judgment should be reversed and remanded. It is so ordered. All concur.