## Kaufman-Straus Co. v. Bennett et al.

(Decided Sept. 30, 1938.)

EDWARD J. HOGAN and A. M. THOMAS for appellant.

WILLIAM M. DUFFY for appellees.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

John Bennett, a former employee of Kaufman-Straus Company, filed a claim for compensation and

was given the following award against that company by the Workmen's Compensation Board:

"This cause coming on for trial before the full Board, and the board having considered same and being sufficiently advised adjudges that Plaintiff, John Bennett, shall recover from Defendant, Kaufman-Straus Company, $15.00 per week for a period of 26 weeks, from February 10, 1936, less one week waiting period, and thereafter $6.00 per week for a period of 309 weeks for 50% partial permanent disability, the total compensable period in no event to exceed 335 weeks, and the total amount awarded in no event to exceed $2,229.00. Plaintiff shall also recover 6% interest on all part due installments."

In due time the Kaufman-Straus Company petitioned for a review of that award by the court. Its petition was dismissed and from that judgment the company has prosecuted this appeal and is seeking a reversal of the judgment upon the sole ground that Bennett failed to give notice of his injury "as soon as practicable." We will be helped to understand this matter by an examination of the facts as diclosed by the record.

### The Facts

Bennett testifies he entered this Company's employment in September, 1929. From time to time he sustained a few minor injuries which he duly reported and for which he received treatment. Thus we know he knew how and to whom to report any injury and the necessity of doing so.

He claims now, that on February 10th, 1936, he was standing on a ladder engaged in putting some bed-rails into a rack and that this ladder slipped and he rode it down until it caught and came to rest upon a work bench. We know but very little about this ladder, except that it was an 8 foot ladder, that the top of it was resting against the wall, that Bennett was standing upon it with his back to the ladder. He was not at the top of it, but his feet were somewhere near the middle of it. The record does not show whether this was an ordinary step ladder or a post and rung ladder. As the ladder slipped, Bennett rode it down, his feet resting upon a step or rung and his hands upon the posts or side-rails, so that he was, as he expressed it, upon all fours on the ladder, and when it struck this work bench

and stopped, he was still upon it. No one else saw the accident. Bennett says the only injury he noticed at the time was a slight abrasion on his left elbow to which he applied some mercurochrome from a first aid kit which the company had. As soon as the man that was working with him returned, Bennett resumed his work, worked the rest of the day and continued to work for the company without interruption or loss of time until the 19th of May, 1936, when he had some misunderstanding with the boss on that floor and Bennett quit his employment with the company.

He says now, that shortly after this accident he had some pain in one of his hips, but he made no report of any injury to any officer of the company. He soon began to have some pain in the lower part of his spine and visited Dr. King, a chiropractor, who "massaged his back," as Bennett says. The trouble with his back grew no better and on April 4th, he consulted Dr. Frank M. Stites, who gave him a thorough examination and found Mr. Bennett had some bad teeth, bad tonsils, a goiter, some trouble with his prostate gland and was complaining of pain in his back and a burning sensation when he voided his urine. Dr. Stites concluded the trouble with Bennett's back was due to the condition of his prostate gland and began to treat him for prostatitis.

Mr. Bennett wears glasses and while at work on the 18th of April, he, in some way, struck these with a hammer, and broke the right lens and slightly cut his face near his right eye. He reported this injury to the company, which at his request sent him to Dr. Dwyer, who examined his eye to see if there was any glass in it, found none, dressed his wounds and Mr. Bennett returned to work.

On the 8th of May, 1936, Mr. Bennett, so he says, told Dr. Stites about sustaining an injury to his back when this ladder slipped and fell with him and that Dr. Stites sent him to Dr. Goldberg. Dr. Stites denies sending Bennett to Dr. Goldberg and says that on the 8th of May, Bennett told him about this ladder slipping with him and that he had been to see Dr. Goldberg. Dr. Goldberg testifies, that on the 8th day of May, Bennett told him about a ladder slipping with him about a month before. He found Bennett's back was tender and advised Bennett to have an x-ray made,

which Bennett declined to do because he had not the money. Dr. Goldberg taped up Bennett's back on that day. He saw him again on the 15th of May, took off the old dressing, treated Bennett's back, and put on a fresh dressing. The same thing occurred on the 22nd day of May. Bennett has continued under Dr. Goldberg's treatment, but these are the only dates disclosed by the record.

Some time in July Bennett had an x-ray of his back made, which has not been brought here. This x-ray, so Dr. Goldberg testified, showed a "dislocation forward of the third lumbar vertebra which apparently is due to a fracture between the body and the neural arch." What the neural arch may be is not explained, nor have we been able to learn from the scientific works available to us.

After leaving the employment of the company on May 19th, Bennett returned in a week or ten days to get the wages that were due him, and he was back in the office of the company again in a few days, in response to a telephone call, and saw Mr. Early. But on neither of those occasions did he say anything to anyone about receiving an injury to his back when this ladder slipped, although at that time he was receiving treatment from Dr. Goldberg, and had been doing so since the 8th day of May. He knew his back was hurting him and that Dr. Goldberg thought it was possibly due to an injury resulting from this ladder slipping with him. On July 1, 1936, Bennett visited the office of the company again and saw Mr. R. J. Gardner, the secretary-treasurer of the company, and told him about this ladder slipping, and that he thought there was some compensation due him for the injuries he claimed he sustained when that occurred. Bennett admits in his testimony that this is the first time that he ever mentioned anything about receiving an injury to his back to any officer of the company.

### Our Conclusion

This matter has been gone over by the Workmen's Compensation Board, and we do not like to disturb the finding of that board. But, we find this in that board's report:

"It is suggested in the record that the high end of the ladder on which plaintiff was standing struck a

work bench, which was setting on the floor, immediately under the ladder, *plaintiff's back which was toward the wall struck the floor, the work bench, or the wall near the bottom, when he crashed down with the ladder.*''

We have italicised a part of this, for which we can find absolutely no support anywhere in the record. At another point in the report of the Workmen's Compensation Board, we find this:

''As soon as the seriousness of his condition was made manifest to him by the use of an x-ray, he forthwith went to the defendant company and apprised it of his condition, resulting from his injury and asked for compensation.''

Now this is not only without support in the evidence, but the evidence is to the contrary. This would indicate that Bennett made his report to Gardner because of what he had learned when the x-ray was taken. But the report to Gardner was made July 1st, 1936, and the x-ray was not taken until later in that month and the record shows that. We are therefore compelled to hold that Bennett did not report his injury as soon as practicable. His back began to hurt him a short time after this accident. He had Dr. King treat him, and then he had Dr. Stites, later Dr. Goldberg. He knew just as much after his first visit to Dr. Goldberg on May 8th, as he did on July 1st, when he made compliant to Mr. Gardner.

The notice which the injured servant must give to his master is notice of an injury, a mere notice of the accident is not enough. He must notify his master that he was injured in an accident. See Bates & Rogers Construction Company v. Allen, 183 Ky. 815, 210 S. W. 467. He must give this notice as soon as practicable. Just how soon that shall be is by no means definitely settled. We took this Workmen's Compensation Act, Kentucky Statutes, section 4880 et seq., from England where it has been in force for some years. In 78 A. L. R. on page 1244 there will be found a number of English cases wherein it was held the notice was not given in time, and beginning near the middle of the first column on page 1245 there are a number of English cases wherein it was held that the notice was given in time. Following these English cases, on pages 1245 and 1246, there are

some American cases. After examining these and two rather lengthy considerations of this record, we have concluded this notice was not given in time.

In Northeast Coal Company v. Castle, 202 Ky. 505, 260 S. W. 336, Castle was injured on December 29th, 1919, and the first notice the company had of his injury was in the latter part of April, 1920, about four months thereafter. Here the company received its first notice of injury on July 1st, 1936, about 5 months after the accident which occurred on February 10th, 1936.

In both cases there is the complication of pre-existing disease. Indeed, in this case, the Workmen's Compensation Board in its finding said:

"Dr. Stites was also of the opinion that Plaintiff would never again be able to handle furniture or do other heavy work. While Dr. Goldberg estimated Plaintiff's disability to the body as a whole at 50%, his opinion and the opinion of Dr. Stites that Plaintiff will never again be able to resume the work in which he was engaged at the time of his injury, or do any other hard labor, certainly puts him in the class of the totally disabled, as total disability is defined by our courts, but since each of the medical witnesses testified that Plaintiff was also suffering from focal infection and that any injury sustained by him as a result of the accident complained of would be aggravated by his focal infection, we feel that 50% of Plaintiff's total disability after his convalescing period of six months, should be attributed to pre-existing disease."

We are unable to distinguish this case from the Castle Case. Therefore, the trial court should have sustained the petition for review and should have set aside the award made by the Workmen's Compensation Board.

Before concluding this opinion we want to call attention to the fact that this award allows to Mr. Bennett full compensation with interest for 26 weeks following the 10th of February, 1936, whereas Mr. Bennett was at that same time and until he quit on May 19th, in the employment of this company working regularly and receiving his regular wages, so under no circumstances could this award be justified during that period.

Judgment reversed. Whole Court sitting.

Perry, J., dissenting.