Thomas STRAUGHAN, a minor, by his
next friend, Lester Straughan,
Plaintiff-Respondent,

v.

Samuel T. ASHER, Defendant,

Farmers Insurance Exchange of Farmers
Insurance Group, Garnishee-Appellant.

Sandra STRAUGHAN, a minor, by her
next friend, Lester Straughan,
Plaintiff-Respondent,

v.

Samuel T. ASHER, Defendant,

Farmers Insurance Exchange of Farmers
Insurance Group, Garnishee-Appellant.

Nos. 31471, 31472.

St. Louis Court of Appeals.

Missouri.

Nov. 19, 1963.

Dearing, Richeson & Weier, H. L. C. Weier, Hillsboro, for appellant.

Roberts & Roberts, Raymond S. Roberts, Sr., J. Richard Roberts, Farmington, for respondent.

BRADY, Commissioner.

Each of the cases consolidated in this appeal began as an action by the respondents, hereinafter referred to as the plaintiffs, wherein they sought to recover for personal injuries arising out of an automobile accident. Judgment was entered in favor of plaintiffs and against Samuel T. Asher, hereinafter referred to as the defendant, in the amount of $2,500.00 and costs in each case. Thereafter garnishment proceedings were instituted in each case against the Farmers Insurance Exchange of the Farmers Insurance Group, hereinafter referred to as the garnishee. Upon trial in the garnishment proceeding, the trial court found in favor of the plaintiff and the garnishee appeals.

In the trial court the parties filed a stipulation of facts. According to that stipulation, at the time of the accident the defendant was driving an automobile belonging to his mother, Ruby Littrell. This automobile was covered by a policy of liability insurance issued by the garnishee. Under the terms of that policy, such coverage as was afforded by the policy was extended to any person using the automobile other than the named insured provided the use was with the permission of the named insured. The stipulation stated the judgment in each of the personal injury actions, and that executions were issued and writs

of garnishment were served upon the garnishee in each case. The pleadings in the garnishment proceeding consist of interrogatories and the answers thereto, plaintiff's denial of these answers, and the garnishee's reply to that denial. Before proceeding in the garnishment action, the parties stipulated that the only issue to be tried was whether the defendant was driving this automobile with the permission of his mother when the accident occurred and that the evidence on this issue would be applicable in each of the garnishment proceedings.

The only evidence on this issue offered by the plaintiffs consisted of testimony given by witnesses as to statements they stated they heard Mrs. Littrell make to the investigating officer at the scene of the collision. The garnishee objected to this testimony each time it was offered on the grounds that " * * * it's hearsay. Mrs. Littrell is here in the courtroom. She was not a party to this accident * * *."

The transcript discloses that this testimony came into the evidence in the following manner. In each instance the objection that the evidence would be hearsay was timely made and overruled and, for that reason, will not be shown in the following excerpts from the transcript. Lester Straughan was asked:

"Q. All right. Did you hear her there, in the presence of yourself and others, make some statements relative to who was driving, how they were driving the car or whether or not they were driving with her permission? Now, answer that yes or no.

"A. Yes, sir.

*    *    *    *    *    *

"Q. Go ahead and tell us what you heard her say.

"A. She was crying. She went over to Bill Black, best I remember it, she either took him by the coat or put her hands on him here and said, 'Bill, I knew better in the first place to let my boy have my car.' I believe that was right.

"Q. Now, did she make that statement or similar statements more than one time there?

"A. Yes. But in different language, yes.

"Q. Now, was her boy still there at the time?

"A. Yes, Sir."

The witness Botkin was asked if he heard Mrs. Littrell make any statements relative to her boy driving the automobile, and testified as follows:

"A. I heard her make a statement to Bill Black that she knew that she shouldn't have let her son have the car."

The witness Keith was asked if he heard Mrs. Littrell make any statements relative to how her son happened to be driving the car. He said that he did and when asked what he heard her say, testified:

"A. Well, she said that—she was talking to Bill Black, she said she knowed she shouldn't of let her boy, let him have the car, drive the car, something to that effect."

After the usual preliminary questions, the witness Ruth Sago was asked to tell the court what statement she heard Mrs. Littrell make. She gave the following answer:

"A. Well, as I came up to Bill Black to find out where Sandy was she was there and she said to him, she said, 'Oh, I wish that I hadn't let him have my car.' And I went over where Sandy was."

In like manner, the witness Glen Sago was asked to tell the court what statement he heard her make and answered:

"A. She, she—I can't remember the exact words but she said something to

the effect that she knew she shouldn't have let her boy have the car."

The witness Botkin testified that he heard Mrs. Littrell make this statement " * * * somewhere around 8:30, 9:00." Lester Straughan was at his home about 3 blocks away when he was notified of the accident and he went immediately to the scene. Mrs. Littrell arrived at the scene after he got there. From the testimony of Officer Black, the person to whom Mrs. Littrell made the statements these witnesses repeated, it appears that when Mrs. Littrell arrived at the scene there were two ambulances already there, and a wrecker was attempting to right one of the automobiles involved in the collision. He was in the center of the street, attempting to direct traffic and to get the ambulances on their way, when Mrs. Littrell ran up to him. He did recall that she told him it was her automobile. When asked if she did in fact make these statements during their conversation, his answer was "I don't recall her saying one way or the other." At another point he was asked a similar question and answered, "She could have and she could have not. I don't know, I wouldn't say yes or no, sir."

Mrs. Littrell denied making these statements. She also denied that she had given her son permission to use her automobile on this or upon any earlier occasion as he was 15 years of age and did not have a license. She did admit that on one occasion she had allowed him to drive her from her home to her mother's farm, a distance of 6 or 7 miles, so he could practice for the "drivers test" he was to take soon. Her testimony was that the defendant and a "couple of boys" came down to her place of employment. She drove home with them in the automobile, stopping on the way to pick up a girl friend whom she took home. She then stopped at a food market and shopped. She then drove home without any other stops. The defendant carried in the groceries and went back out to the automobile to wait with his friends. The boys had asked to go to the "drive in" and Mrs. Littrell agreed to take them. Mrs. Littrell testified she found

out about the accident about 10 minutes after her son left home when he came home to tell her. She had to put on a dress and then went immediately to the scene of the collision. When she arrived, she saw Jerry Counts lying on the ground and " * * * the little Straughan girl laying on a stretcher * * *." She testified she was excited but when asked if she was sure what she did say, answered "Oh, I, I assume that I know what I said."

The defendant testified he never had permission to take the automobile alone on this or any other occasion. His testimony was that after carrying in the groceries he returned to the automobile to wait for his mother. After the boys had waited for some time, the witness Counts changed his mind about going to the "drive in" and wanted to go home. The defendant testified " * * * I told him I didn't know if I should take him or not. I didn't think she'd miss the car. Just going right up there and come right back. So I took him home." Defendant stated that he had taken this automobile out on 2 other occasions when his mother was away from home, taking a duplicate set of keys out of his mother's dresser, but that she had never known about it. Counts testified that he had been with the defendant on another occasion when the latter took his mother's automobile in her absence. Counts also testified that the defendant did not go back into the house and had no opportunity to converse with his mother after he, Counts, changed his mind about going to the drive in and asked the defendant to take him home. The plaintiff fixed the time of the accident at "About 7:30 or 8:00, somewhere, I'm not sure." He placed the scene as about 7 or 8 blocks from his home and stated the accident occurred about 10 or 15 minutes after he left his home.

The rules of review in cases of this nature are well known. This court is to review the case de novo and is to reach its own conclusions as to the weight and value of the evidence, giving due regard to the opportunity of the trial court to judge the credibility of the witnesses. § 510.310,

RSMo 1959, V.A.M.S., and cases cited at n. 105.

The garnishee has briefed two allegations of prejudicial error. The second of these is the allegation that the trial court erred in admitting the allegedly hearsay testimony of the witnesses as that testimony is set out earlier in this opinion. We will not rule upon that allegation of error for the reason that this court is empowered to consider such of the evidence it deems admissible and to exclude from its consideration evidence improperly admitted. Feinberg v. Pfeiffer Co., Mo.App., 322 S.W.2d 163; § 510.310, supra, n. 109. The remaining allegation of prejudicial error presented by garnishee is that the plaintiffs failed to prove the defendant had his mother's permission to drive her automobile.

There is no question but that the permission provided by the omnibus clause of an insurance policy can be either express or implied from the conduct of those in position to give that permission, but the person claiming such permission must prove it and no implied permission can arise merely because someone obtained possession of the automobile and used it. Varble v. Stanley, Mo.App., 306 S.W.2d 662. Accordingly, the plaintiffs had the burden of proof.

It should be noted that the testimony of Lester Straughan differs from that of the other witnesses. His testimony was to the effect that Mrs. Littrell told Officer Black that she knew better than to let the defendant have the automobile. This testimony does not substantiate plaintiffs' argument that Mrs. Littrell gave her son permission to use the automobile. Taken literally, the testimony of this witness is that she knew better than to give her son permission to use the automobile. Plaintiffs contend that a reasonable inference to be drawn from this testimony is that Mrs. Littrell gave the defendant permission to use the automobile. It would seem that an equally reasonable inference to be drawn from such a statement is that Mrs. Littrell would not do what she stated she knew better than to do. However, we need not decide the question for even if this testimony is subject to the inference plaintiffs seek to draw from it, it is equally subject to the other inference stated above. In Varble v. Stanley, the court, speaking of the accepted rule that a case may rest upon an inference, said (306 S.W.2d 662, l. c. 667):

"* * * But such inference must be drawn from substantial and probative evidence which is sufficient to lead to a conclusion as to a certain result which, according to the common experience of mankind, follows naturally and usually from the given state of facts and which at the same time logically and according to the common experience of mankind *excludes a different result or conclusion.*" (Emphasis supplied.)

In the event there are two reasonable inferences to be drawn from the language testified to and these inferences are contradictory, that language cannot constitute substantial proof of either inference as the adoption of one inference does not logically and according to the common experience of mankind exclude the other different result or conclusion. Varble v. Stanley, supra. Accordingly, we need not rule upon whether the testimony of Lester Straughan is admissible and properly for our consideration; even if we assume it is, being subject to other interpretations, that testimony is not sufficient to prove the issue of permission.

The testimony given by the witnesses Ruth Sago, her husband, Botkin, and Keith differ from that given by Lester Straughan. Mrs. Sago's testimony was that Mrs. Littrell told the officer, "Oh, I wish that I hadn't let him have my car." The testimony of the other witnesses was also phrased in the past tense. For example, that of the witness Keith who testified Mrs. Littrell stated "she knowed she shouldn't of let" the defendant have the automobile. This testimony does give rise to the inference that she did, in fact, give him permission. If properly for our consideration, such testi-

mony supports the plaintiffs' contention that they carried the burden of proving the defendant had Mrs. Littrell's permission to drive the automobile. It follows that whether such testimony is properly for our consideration is the decisive issue of this appeal.

■ The garnishee contends this evidence should be excluded as a violation of the rule prohibiting hearsay. The plaintiffs contend this evidence was properly admitted by the trial court and should be considered by this court on the ground that this evidence constitutes either a declaration against interest on the part of Mrs. Littrell, or, in the alternative, that the testimony was a part of the res gestae. It requires no citation to substantiate their contention that declarations against interest and res gestae statements are recognized exceptions to the rule against hearsay evidence.

The basis for the exception of a declaration against interest to the rule prohibiting hearsay evidence is stated in Wigmore on Evidence, 3rd Edition, Vol. V, § 1457, as being:

"* * * the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect, and is thus sufficiently sanctioned, though oath and cross-examination are wanting * * *."

Since Mrs. Littrell was not a party to the original proceeding nor to the garnishment action, we necessarily note the distinction between an "admission against interest" as contrasted to a "declaration against interest." The distinction is clearly stated in Roush v. Alkire Truck Lines, Mo., 299 S.W. 2d 518, l. c. [1–4] 520, where it was held:

"* * * An admission is competent only when made by a party or by someone identified in legal interest with a party to the action, and is admissible although the declarant is available as a witness. *On the other hand, a declaration is in the nature of secondary evidence and is admissible only when the declarant is not available as a witness.* It is competent even though the declarant is not a party or in privity with a party to the action, but the statement of the declarant must have been adverse to an interest possessed by the declarant at the time the statement was made. (Citing cases.)" (Emphasis ours.)

See also Moore v. Metropolitan Life Ins. Co., Mo.App., 237 S.W.2d 210; 31 C.J.S. Evidence § 217, et seq.; 20 Am.Jur., Evidence, § 556; Wigmore on Evidence, supra, § 1456; Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284, l. c. [5, 6], [7]. In 31 C.J.S. Evidence, § 217; 4 requirements are given before a declaration against interest is admissible:

"* * * (1) Declarant must be unavailable as a witness. (2) The declaration must have related a fact against the apparent pecuniary or proprietary interest of declarant when his statement was made. (3) The declaration must have concerned a fact personally cognizable by declarant. (4) The circumstances must render it improbable that a motive to falsify existed. * * *"

■ It should be noted that the Restatement does away with the first requirement; i. e., that the declarant must be unavailable as a witness. See the Restatement, A.L.I. Model Code of Evidence, Rule 509, (1), Comment c. This view proceeds upon the compelling argument that if one accepts the basic premise or basis for the exception to be that, human nature being what it is, a statement asserting a fact distinctly against one's interest is so likely to be true that testimony as to that statement should be admitted, then it is illogical to require the one making the statement to be unavailable before the truthful statement can be heard. While this may seem logical in view of the basis for the exception of declarations against interest as that basis was given by Wigmore, the Supreme Court of this state

has consistently required that the declarant be unavailable as a witness. Roush v. Alkire Truck Lines, supra; Sutter v. Easterly, supra. However, by the adoption of what Wigmore calls the "Necessity Principle" (Wigmore on Evidence, 3rd Edition, Vol. V, § 1456), Missouri has adopted a more realistic view than most jurisdictions when determining if the witness is, in fact, unavailable. Under that test, we have enlarged the accepted condition of unavailability to include illness, insanity, absence from the jurisdiction, and incompetency through interest. Sutter v. Easterly, supra. We are not aware of any instance, however, where the exception of a declaration against interest has been applied to allow the admission of hearsay evidence in a case involving a declarant who actually did testify. Roush v. Alkire Truck Lines, supra, specifically rules this point to the contrary, stating (299 S.W.2d at 520):

" * * * We need not determine if the statement attributed to the truck driver was adverse to an interest possessed by him at the time, because, in any event, there was no showing that the declarant was not available, *and in fact he was available and subsequently testified. Therefore, the statement was not admissible as a declaration against interest.*" (Emphasis ours.)

The result may seem inconsistent in that although this testimony would have been available to impeach Mrs. Littrell who testified she did not give the defendant permission to use her automobile, it is not admissible to prove she did give the defendant permission. Be that as it may, we are bound by Roush v. Alkire Truck Lines, supra. It follows that this court must reject the plaintiffs' contention that the hearsay testimony of these witnesses is properly for our consideration as admissible declarations against interest.

The plaintiffs then urge that we should consider these statements on the ground as admissible under the res gestae exception to the rule prohibiting hearsay.

The term res gestae has been bitterly criticized as a meaningless, even harmful Latin shibboleth. Meyers v. Smith, Mo., 300 S.W.2d 474. Wigmore on Evidence, Vol. VI, § 1745. The indiscriminate use of the term as a catch-all phrase should be avoided. Distinctions should be carefully drawn between the several kinds of statements that may be received in evidence under the general heading of res gestae. Sconce v. Jones, 343 Mo. 362, 121 S.W.2d 777, l. c. 781; Meyers v. Smith, supra, and Roush v. Alkire Truck Lines, supra; see also Keefe v. State, 50 Ariz. 293, 72 P.2d 425. We need not go further into the general field except to state that the statements here involved cannot qualify as that type of res gestae statement known as a "verbal act." If this testimony is to be admitted, the statements made must qualify as another type of res gestae statements; i. e., those known as "spontaneous exclamations." The exception of spontaneous exclamations to the rule prohibiting hearsay is one that, under certain circumstances, permits testimony as to statements, made by a person involved in or present at an accident, declaring the circumstances of an injury at or after its occurrence. Sconce v. Jones, supra at 121 S.W.2d l. c. 781. In the Sconce case at the same local citation, the basis for this exception is given by quoting with approval from Wigmore as follows: " 'This general principle is based on the experience that, under certain external circumstances of physical shock, a stress of nervous excitement may be produced which stills the reflective faculties and removes their control, so that the utterance which then occurs is a spontaneous and sincere response to the actual sensations and perceptions already produced by the external shock. Since this utterance is made under the immediate and uncontrolled domination of the senses, and during the brief period when considerations of self-interest could not have been brought fully to bear by reasoned reflection, the utterance may be taken as particularly trustworthy (or, at least, as lacking the usual grounds

of untrustworthiness), and thus as expressing the real tenor of the speaker's belief as to the facts just observed by him; and may therefore be received as testimony to those facts.' " In Sconce v. Jones, supra, 121 S.W.2d l. c. 781, it was held that:

" * * * The essential test of this class of statements is spontaneity. The lapse of time involved is material mainly as evidence of lack of spontaneity."

The burden is on the plaintiffs to make a sufficient showing of spontaneity. Sconce v. Jones, supra, and cases cited at 121 S.W.2d p. 782. What constitutes a sufficient showing of spontaneity depends upon the circumstances of each case. Wigmore on Evidence, 3rd Edition, Vol. VI, § 1750, p. 144, and see Missouri cases cited p. 150. The plaintiffs contend that whether there was a sufficient showing made is largely a matter of discretion and there will be no reversal unless there is an abuse of discretion shown. It is true that there are cases holding that trial courts are privileged to use reasonable discretion in determining whether hearsay testimony is admissible as a part of the res gestae exception to the hearsay rule of evidence. Billingsley v. Kansas City Public Service Co., 239 Mo. App. 440, 191 S.W.2d 331, l. c. 334; Legger v. Great Northern Life Ins. Co., Mo.App., 216 S.W.2d 106, l. c. 109. However, as was stated in Meyers v. Smith, supra, 300 S.W. 2d l. c. 477, " 'No reliance can be placed on these decisions further than to say that the court can, if it wishes to, review the ruling without any concession to the trial court, but, if it wishes to, may review it cursorily and refer to the judge's discretion as a convenient resort, or a makeweight, or as a deciding factor where the evidence is obscure.' " In the Meyers case, supra, the court noted with approval the position of those who urge that whether the evidence is admissible as res gestae is a question of law which the appellate court should pass upon as it does any other mixed question of law and fact. We think the question is not one properly resolved by a reference to the trial court's discretion but is for our determination.

It is well settled, however, that to be admissible under the res gestae exception to the rule prohibiting hearsay, the statement must disclose something done, seen or heard by the speaker in the course of the accident. In the note in 163 A.L.R. at p. 193, the writer collects the cases so holding and states the limitation in this manner: "Accordingly, a declaration is not admissible if it but divulges facts antecedent to the occurrence itself, however strongly it may be authenticated by post-accident excitement * * *." See also 53 A.L.R.2d 24(b) p. 1328 and 25(b) p. 1330. It follows that the statements here involved are not admissible under the res gestae exception to the rule prohibiting hearsay.

As stated earlier herein, the admittedly hearsay testimony of these witnesses is the only evidence by which the plaintiffs seek to bear their burden of proving Mrs. Littrell gave the defendant permission to drive her automobile. Since this testimony is not properly for our consideration, the plaintiffs have failed to bear their burden of proof and the judgment in the garnishment proceeding should be reversed. This cause should be remanded to the trial court with directions to enter a verdict in favor of the garnishee. The Commissioner so recommends.

PER CURIAM:

The foregoing opinion of BRADY, C., is adopted as the opinion of this court. The judgment in the garnishment proceeding is reversed and the cause remanded to the trial court with directions to enter a verdict in favor of the garnishee.

RUDDY, P. J., and WOLFE and ANDERSON, JJ., concur.