Lenn Homer ORR, Individually and as next friend of Sharon Orr, et al., Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, a corporation, Respondent.

No. 58062.

Supreme Court of Missouri, En Banc.

April 9, 1973.

Rehearing Denied May 14, 1973.

Alvin D. Shapiro, Judson L. Palmer, Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for appellants.

Edward W. Mullen, B. John Readey III, Deacy & Deacy, Kansas City, for respondent.

HOLMAN, Judge.

Plaintiffs Homer Orr and his minor daughter Sharon were badly injured and Homer's wife was killed in an automobile collision. Defendant, Charles R. Young,

then 18 years of age, was the driver of the other car, a 1963 Dodge owned by his grandmother, Lucille Thieman. In this declaratory judgment action, after certain preliminary matters were disposed of, the issue involved was the liability of defendant State Farm Mutual Automobile Insurance Company on a liability policy issued to Thomas Young, father of Charles. A trial resulted in a jury verdict in favor of State Farm. Plaintiffs appealed to the Missouri Court of Appeals, Kansas City District. That court adopted an opinion which reversed the judgment and remanded the case for a new trial. Upon application of State Farm we ordered the case transferred to this court. It will be determined here "the same as on original appeal." Mo.Const. Art. V, § 10, V.A.M.S.

The primary insurance carrier, Employers Mutual Casualty Company, joined with plaintiffs in this suit. It had agreed to pay plaintiffs $50,000, the full amount of its coverage, upon being properly released from its obligations under its policy. An agreed judgment was entered in that regard. The settlement and judgment did not release Charles but the court approved an agreement by plaintiffs not to levy execution against him personally but to seek collection of any judgment obtained solely from defendant State Farm. The foregoing was apparently accomplished under the provisions of §§ 537.060 and 537.065, RSMo 1969, V.A.M.S.

Respondent's insurance policy, issued to Thomas Young, provided $20,000 coverage on the 1966 Ford automobile owned by the insured. Charles was living with his father at the time of the collision and, as a "resident of the same household," was an additional insured and the coverage applied to a "non-owned" automobile. However, the policy excluded coverage under the non-owned provision as to any automobile "furnished or available for the frequent or regular use of the named insured, his spouse, or any relative of either residing in the same household * * *." The issue involved in the trial and determined by the judgment was whether the 1963 Dodge owned by Mrs. Thieman was furnished or available for the frequent or regular use of Charles.

Respondent assumed the burden of proving its affirmative defense and proceeded first in offering evidence. The evidence indicated that the collision occurred on December 21, 1968. An adjuster for respondent visited Charles and his father on January 23, 1969, and at that time the adjuster told Charles that if he made regular or frequent use of the Dodge, then "usually" there was no coverage. On that date both Charles and his father signed a "Reservation of Rights Agreement" presented by the adjuster. Thereafter, on February 4, 1969, the adjuster returned and obtained a more detailed statement from Charles as to the use of his grandmother's car, which statement was recorded on a dictaphone and later transcribed and shown to Charles. Charles stated therein that the Dodge was available for his frequent use at all times; that it was all right with his grandmother for him to use it any time she was not using it; that during the fall of 1968 he lived with his father in North Kansas City but he still had his grandmother's car to drive when the weather was bad and that he used it in making deliveries for her in her dry cleaning business. Charles' grandmother lived in Kansas City, Kansas.

On February 18, 1969, respondent's Claim Superintendent wrote a letter to Charles advising him that because the Dodge was furnished or available for his frequent or regular use the company disclaimed any obligation or liability under its policy arising out of the collision in question.

The instant suit was filed December 19, 1969. On January 10, 1970, at the request of respondent's attorneys, Charles went to their office, accompanied by his mother, and was questioned by the attorneys concerning the use of the Dodge and its availability to him. This conversation was

recorded by Mrs. Fowks, a court reporter, and the questions and answers were later transcribed. At that time Charles stated that he lived with his grandmother during the spring and summer of 1968; that when the weather was good he would ride his motorcycle to school, but that during that period he would drive the Dodge on an average of two or three times a week; that in September of 1968 he began living with his father in North Kansas City but helped his grandmother with the cleaning business on weekends; that from September until the time of the collision in December of 1968, he continued to use the Dodge "two or three, maybe four times a week."

In the trial of the case respondent read the deposition of Charles' father, Thomas. That testimony need not be stated in detail but it tended to support respondent's contention that Charles used the Dodge automobile regularly. Thereafter, respondent called as a witness Mrs. Fowks, the court reporter, and offered to prove a number of the statements made by Charles in his interview with the attorneys heretofore described. These were first offered as admissions against interest. Plaintiffs objected on the ground that Charles was no longer an interested party in the case, and the court sustained the objection. Respondent then offered the statements as declarations against the interest of Charles, and plaintiffs objected on the ground that although Charles was a resident of Kansas his deposition had been previously taken by respondent and therefore Charles should be considered as an available witness. The court overruled the objection and permitted Mrs. Fowks to read questions and answers from the statement, which were the same or similar to those heretofore related. The same procedure occurred in regard to the testimony of Dan Witters, respondent's adjuster, who obtained the dictaphone statement from Charles.

Thereafter, plaintiffs, in presenting their evidence, read the deposition of Charles which had been taken by respondent. That deposition was taken under these circumstances: Plaintiffs, a few days before trial, notified respondent that they desired to take the deposition of Charles and his grandmother. They did proceed to take the deposition of Mrs. Thieman and when such was concluded, announced that they would not take the deposition of Charles. Respondent's counsel (no doubt expecting to reaffirm the statements previously given to them by Charles) then proceeded to take his deposition. While Charles did concede that he drove the Dodge from three to five times during the month preceding the accident, he stated that he had forgotten substantially all of the statements he had made when previously interviewed by Mr. Witters and by respondent's attorneys. Respondent sought to refresh his memory by reading various excerpts from those statements but was unsuccessful.

The following is quoted from the deposition as an example of Charles' loss of memory concerning his statements relating to his use of the Dodge:

"Q Were there times during the period that you were staying with your grandmother that you drove the Dodge automobile as much as two or three times a week on an average?

"A I really couldn't say; I don't remember. * * *

"Q Now, sir, I'll ask you to just read, not into the record, but to yourself, for the purpose of refreshing your recollection, these questions and answers here on pages 15 and 16 [statement of Jan. 10, 1970] to see if that does refresh your recollection as to the number of times that you had occasion to operate the Dodge automobile of your grandmother.

"MR. SHAPIRO: Whereupon the witness reads pages of document.

"Q Does that refresh your memory at all, sir?

"A  I really don't remember the questions that were asked me, or my answers.

"Q  Do you have a recollection today, Mr. Young, as to how many times per week on an average you did drive the 1963 Dodge of your grandmother's during the time that you lived with her?

"A  I really don't have any recollection as to how many times I used it.

"Q  Well, on an average of how many times a week or month?

"A  I really couldn't say.  * * *

"Q  With reference to the frequency with which you drove the automobile between August of '68 and December of '68, do you recall being asked these questions and giving these answers: Question, 'So you would use it maybe as few times as twice a week, and maybe as much as four times a week?'  And wasn't your answer, 'Yes'?  Question, 'Or four days a week?'  Answer, 'Yes.'  Do you recall giving those answers to those questions?

"A  No, I don't."

The sole point raised by plaintiffs on this appeal is that "the trial court erred in admitting into evidence out-of-court statements of Charles Young."  As indicated, these statements were admitted as declarations against interest, an exception to the hearsay rule.  The primary contention of plaintiffs for the nonadmissibility of those statements was that Charles was available as a witness because his deposition had been taken prior to trial.  In connection with our consideration of this point we note the distinction between an "admission against interest" and a "declaration against interest."  This court has said that "[a]n admission is competent only when made by a party or by someone identified in legal interest with a party to the action, and is admissible although the declarant is available as a witness.  On the other hand, a declaration is in the nature of secondary evidence and is admissible only when the declarant is not available as a witness.  It is competent even though the declarant is not a party or in privity with a party to the action, but the statement of the declarant must have been adverse to an interest possessed by the declarant at the time the statement was made."  Roush v. Alkire Truck Lines, 299 S.W.2d 518, 520 (Mo. 1957).

In our research we find that there has been considerable support for the suggestion that the requirement that the declarant must be unavailable as a witness should be dispensed with.  The court, in Straughan v. Asher, Mo.App., 372 S.W.2d 489, at p. 494, discussed that trend as follows: "This view proceeds upon the compelling argument that if one accepts the basic premise or basis for the exception to be that, human nature being what it is, a statement asserting a fact distinctly against one's interest is so likely to be true that testimony as to that statement should be admitted, then it is illogical to require the one making the statement to be unavailable before the truthful statement can be heard."  The reasoning which affords the basis for admitting an admission against interest without regard to availability would logically apply with equal force to a declaration against interest.  The authorities supporting that view include McCormick on Evidence, § 257, p. 554; 2 Jones on Evidence, 5th Ed. § 295, p. 560; Amer. Law Institute, Model Code of Evidence, Rule 509, p. 258, Comment c, p. 258; Uniform Rules of Evidence, 9A U.L.A. 637; Jefferson, Declarations Against Interest: An Exception to the Hearsay Rule, 58 Harvard Law Review, p. 1; Note, 52 Cornell Law Quarterly, 301, 308.  Kansas, by statute, and New Jersey by rule, have dispensed with the nonavailability requirement.  Kan.Anno. Statutes 60–460(j); N.J. Evidence Rule 63(10).  We have given serious consideration to the question as to whether this court should overrule prior cases and rule herein that nonavailability should not be required to be shown in order to admit

declarations against interest. We have decided, however, that that question need not be resolved in this case because not necessary to the decision hereinafter indicated.

■ We rule that the trial court did not err in admitting testimony of the prior statements of Charles. This for the reason that they were admissible as declarations against interest. As to the question of the availability of Charles as a witness, we think that the trial court is vested with a measure of discretion in the determination thereof. It is our view (in accord with the ruling of the trial court) that under the circumstances here presented Charles was not "available" to respondent as a witness, within the meaning of that word as used in the decisions.

It is conceded that Charles was a non-resident of the state and was not personally present at the trial. Therefore, he obviously was not available in the usual sense of that word. It is true that his deposition had been taken by respondent in the manner heretofore outlined. In that testimony he did not deny the statements, favorable to respondent, which he had previously made but stated that he could not remember any of them. That is very unusual for an apparently normal 19-year-old young man. Such would reasonably warrant the conclusion that between the time of the last statement and the taking of the deposition he had decided to endeavor to assist plaintiffs if called upon to testify. ·

"The taking of a deposition is never part of the trial of the cause in which it is taken, but is only a preparatory step designed to obtain or preserve evidence which may subsequently be used at the trial if a situation arises where such evidence is admissible and either party elects to make use of it. As pointed out in Dunn v. Dunnaker, supra, 87 Mo. 597, the fact that a deposition has been taken and is on file in the cause creates no obligation on the part of the one who has taken it to use it as evidence." Woelfle v. Connecticut, Mut. Life Ins. Co., 234 Mo.App. 135, 112 S.W.2d 865, 873 (1938). As indicated in the quoted portion of Woelfle and other statements in that opinion respondent was under no obligation to use Charles' deposition; that although it had been misled into taking the deposition, if it had offered same it would have made Charles its witness and could not have claimed surprise at the testimony and hence could not have endeavored to impeach the witness.

We note that under Rule 804 of the New Federal Rules of Evidence, 56 F.R.D. 183, 320 (which have no application here but are mentioned solely by analogy) the declarations in question would have been admissible because thereunder a declarant is considered unavilable if he testifies to a lack of memory of the subject matter of his statement.

In Sutter v. Easterly, 354 Mo. 282, 189 S.W.2d 284 (Mo.1945), we approved a statement to the effect that whenever a witness, from a practical standpoint, is unavailable his declarations should be received. We therefore held in *Sutter* that a witness who refused to testify on the ground that it would tend to incriminate him was unavailable within the meaning of the rule. It seems to us that a witness who states that he has suffered a complete loss of memory concerning his statements is just as unavailable as the witness in *Sutter*.

It should also be noted that if we hold that Charles was available because his deposition had been taken such would have the effect of overruling our cases which state that a witness located out of the state is unavailable. This for the reason that if the whereabouts of an out-of-state witness is known his deposition could always be taken and it could not be said that he was unavailable. In other words, there is no logical difference in the situation where a deposition has been taken and the one where it could have been taken.

For all the reasons heretofore mentioned we rule, as stated, that Charles was unavailable to respondent as a witness within the meaning of the rule in question.

■ Plaintiffs have advanced other contentions for the nonadmissibility of the declarations. They say that there was no showing that Charles knew his declarations were against his interest. There is some indication that he had been advised that he was excluded from coverage because of a prior "Correction Form" the respondent's agent had prepared; also that respondent had already advised him that he was not covered. We do not agree that Charles accepted those matters as a final determination of noncoverage. He is bound to have known that this collision resulted in extensive damage to plaintiffs and that he should have all the coverage possible. Charles had reached the age of discretion and we do not believe that he accepted a contention of noncoverage by respondent as the end of any possibility of coverage from that source.

■■ It is also said by plaintiffs that Charles could not make a valid declaration against interest because he was a minor and because, at the time of the second statement, the suit had been filed but no guardian ad litem had been appointed for him. We do not agree. It is clear that a minor who has reached the age of discretion can make an admission against interest. Gebhardt v. United Rys. Co. of St. Louis, 220 S.W. 677 [3] (Mo.1920). And, while a guardian ad litem must be appointed before further court proceedings can be had, we know of no authority for the proposition that such a minor cannot be interviewed by an attorney before such an appointment. We also find no merit in the claim that a declaration against interest must have been made before the suit was filed.

■ It is contended that the declarations concerning use of the car during the six-month-period prior to September 1968 were not relevant because Charles was then living with his grandmother. We think the objection goes more to the weight to be given such evidence than to admissibility. The use during that period showed a regular course of action which continued during the period after Charles moved to his father's home. We rule that the trial court did not err in the admission of those declarations.

■ We rule adversely to plaintiffs on their contention that it was error to admit the answer Charles made to Mr. Witters to the effect that this car was available for his frequent use at all times. It is said that such was an opinion or conclusion but we regard it as a statement of fact.

The judgment is affirmed.

FINCH, C. J., and DONNELLY, SEILER, MORGAN and HENLEY, JJ., concur.

BARDGETT, J., dissents in separate dissenting opinion filed.

BARDGETT, Judge (dissenting).

I respectfully dissent for the reason that I believe that it was error to admit into evidence the out-of-court statements of Charles Young and adopt as my dissent portions of the opinion of the Missouri Court of Appeals, Kansas City District, as follows:

"The sole question presented by plaintiffs' appeal is whether the out of court statements of the boy, Charles Young were properly received by the trial court as declarations against interest.

"It is clear, of course, that from March 6, 1970, when plaintiffs accepted $50,000 in partial settlement of their claims under a judgment whereby they agreed to seek

collection of any further judgment solely from defendant State Farm should coverage be proved, that Charles Young, although a nominal party, no longer had any interest which could be affected by the outcome of the litigation. For this reason, Charles Young's out of court statements were not competent as admissions against his interest. Mahon v. Fletcher's Estate, Mo.App., 245 S.W. 372, 374 [5].

". . . we determine the issue on the separate contention made by plaintiffs that both out of court statements were inadmissible as declarations against the interest of Charles Young because the defendant failed to establish that Charles Young was unavailable as a witness.

"The distinction between an admission of a party and a declaration against interest is that '(a)n admission is competent only when made by a party or by someone identified in legal interest with a party to the action, and is admissible although the declarant is available as a witness. On the other hand, a declaration is in the nature of secondary evidence and is admissible only when the declarant is not available as a witness. It is competent even though the declarant is not a party or in privity with a party to the action, but the statement of the declarant must have been adverse to an interest possessed by the declarant at the time the statement was made'. Roush v. Alkire Truck Lines, Mo., 299 S.W.2d 518, 520 [1–4]; Sutter v. Easterly, [354] Mo. [282], 189 S.W.2d 284, 288 [5, 6]. The rule in Missouri continues to be that for a declaration against interest to be admissible, the party offering the declaration must show that the testimony of the declarant is unavailable. Straughan v. Asher, Mo.App., 372 S.W.2d 489, 494–5 [5–6]. A declaration against interest is acknowledged to be an inferior grade of evidence and becomes admissible only by the necessity of the circumstances, 'the impossibility of obtaining other evidence from the same source'.

Wigmore on Evidence, 3rd Edition, Vol. V, Sec. 1456. No such necessity arises if the testimony of the declarant is available.

"In the present case, the testimony of Charles Young had been taken by deposition, at which time the adverse parties were present by attorneys and the witness was subject to full cross-examination. Not only was the deposition available to both parties at trial, but portions of that deposition were actually introduced into evidence. The legal effect of that deposition, for our purposes, is controlled by Civil Rule 57.29 (a), [V.A.M.R.,] which provides that depositions may be used as evidence 'as if the witnesses were present and examined in open court'. The sense of that rule is that the quality of Charles Young's deposition testimony is to be treated as undistinguishable from that which he might have given in person at the trial. The introduction in evidence of that deposition precludes the admissibility of his out of court statements as surely as did the personal testimony of the witness in Roush v. Alkire, supra, 1.c. 520.

"Defendant State Farm urges, however, that Charles Young should be deemed unavailable because in his deposition testimony he answered he could not remember certain facts concerning which he had given answers in his out of court statements. We reject this argument. Defendant State Farm had the same rights of examination and cross-examination on the taking of the deposition that it would have been permitted if Charles Young had appeared personally in court. The record shows that defendant did use the extra-judicial statements in an effort to refresh the witness' memory. Had Charles Young been personally present in court, defendant would have been in no better stead. Actually, defendant is discomfited by the failure of witness Young to testify as defendant would have liked and the real argument is that the prior inconsistent statements should be available as independent substan-

tive evidence, a use which we deny under these facts.

"Defendant State Farm then argues that even if the extra-judicial statements were not admissible as declarations against interest, they were admissible as admissions of a party or one in privity with a party, and thus not subject to the requirement of the non-availability of the declarant. We have already concluded that the effect of the March 6, 1970 settlement agreement was to divest Charles Young of any further interest in the litigation. As the defendant, itself, so aptly stated in its motion for judgment by default filed May 12, 1970: '(T)he only real parties in interest remaining in this case are plaintiffs Orr and defendant State Farm Mutual Automobile Insurance Company . . . . there are no remaining issues as to plaintiff Employers Mutual or defendants Young or Thieman, leaving only plaintiffs Orr and defendant State Farm in the case.'

"Nor can it be said that at the time of trial plaintiffs Orr and Charles Young were in privity so as to authorize the reception in evidence of the statements made by Charles Young as admissions against the interest of plaintiffs Orr. The only privity which could arise between them was that created by statute after the entry of a judgment against Charles Young upon a liability which defendant State Farm would be legally responsible to satisfy. Taverno v. American Auto Ins. Co. [232], Mo.App. [820], 112 S.W.2d 941, 944 [5]; Sections 379.195, 379.200, V.A.M.S.; see, also, Hocken v. Allstate Insurance Co., [235] Mo.App. [991], 147 S.W.2d 182, 186 [2–4]. There is no ground upon which the extra-judicial statements by Charles Young could have been received as affirmative evidence. The admission of those statements constitutes reversible error."

In my opinion the cause should be reversed and remanded for a new trial.