**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Steven Randolph GRANT,
Defendant-Appellant.**

No. 38718.

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 22, 1977.

Dennis N. Smith, Asst. Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Nanette K. Laughrey, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

McMILLIAN, Judge.

Appellant Steven Randolph Grant appeals from his conviction in the circuit court of St. Louis County, Missouri, for burglary second degree, a felony under § 560.045, RSMo 1969, and carrying a concealed weapon, a felony under § 564.610, RSMo 1969. Appellant was sentenced to two (2) years in the state department of corrections for the burglary second degree and fifty days in the county jail for carrying a concealed weapon, the sentences to run concurrently. For reversal appellant argues that the trial court erred in (1) refusing to admit into evidence appellant's testimony about a third party's statement as a declaration against penal interest, (2) submitting instruction No. 8 to the jury which allowed the jury to reach an inconsistent verdict, and (3) submitting instruction No. 9 to the jury which precluded the jury from considering whether a straight razor is a dangerous and deadly weapon. For the reasons discussed below, we affirm the judgment.

About 6:30 a. m. on September 24, 1975, Charles Kirkwood left his home at 8324 Pepperidge Drive in St. Louis County to go to work. About an hour later his wife Estelle left the house to go to work and drop their daughter off at school. Mrs. Kirkwood locked the side door as she left but not the outside screen door. The inner door was intact and in good repair.

About 12:30 p. m. that day Damon Covington was sitting in the front door of his house reading the newspaper. Covington's house is across the street from the Kirkwoods, at 8319 Pepperidge Drive. Covington saw an automobile drive up and park near the Kirkwood's house. A short time later Covington heard someone knocking on the Kirkwood's front door and then saw

someone kicking the side door. Although it is impossible to see anything less than three feet from the Kirkwood's side door from Covington's front door, Covington testified that the person moved as if he was kicking at the door and then he heard the sound of breaking glàss. At this point Covington called the police. By the time Covington went outside, two police cars were outside the Kirkwood's house.

Policeman Charles Crawford, then a member of the Berkeley Police Department, was able to respond immediately to the call. As he approached the Kirkwood's house, he saw appellant run from the carport and place a black object in the car parked in front of the house. Appellant testified that he walked from the carport and raised his hands in the air only after Officer Crawford told him to halt. Officer Crawford then arrested appellant and later arrested another man, identified as Charles Burston, who was seen coming from the carport. Officer Crawford searched both appellant and Burston and discovered a straight razor with a rubber band wrapped around it in appellant's rear pants pocket.

Officer Crawford found a television set and an electric typewriter covered with a blanket by the side door. The interior of the house was in disarray and there was broken glass on the floor. Officer Crawford also found two tape recorders in the car parked in front of the house.

Appellant testified that around 12:00 p. m. on September 24, 1975, he was driving through Kinloch when he was flagged down by Charles Burston. Burston offered appellant five dollars to drive him to his cousin's house in Frostwood to pick up some things. Appellant did so and then testified that he remained in the car listening to the radio until Burston motioned for him. Appellant testified that only Burston entered the house. Appellant also attempted to testify that several weeks later Charles Burston told him that he (Burston) had broken into the house earlier in the day and then persuaded appellant to drive him to pick up the items. This conversation is the subject of appellant's first point on appeal.

For reversal appellant contends that the trial court erred in refusing to admit Burston's statement because it was a declaration against interest and therefore admissible as an exception to the hearsay rule. "Declarations against interest are those [statements] made by persons not a party or in privity with a party to the suit, are secondary evidence and constitute an exception to the hearsay rule, admissible only when the defendant is unavailable as a witness." *Carpenter v. Davis*, 435 S.W.2d 382, 384 (Mo. banc 1968) citing *Neely v. Kansas City Public Service Co.*, 241 Mo.App. 1244, 252 S.W.2d 88, 91 (1952). Traditionally the interest had to be pecuniary or proprietary in character—a declaration which was against penal interest in that it would probably subject the declarant to criminal liability was held not to be sufficient to constitute an exception. *E. g., Donnelly v. United States*, 228 U.S. 243, 273, 33 S.Ct. 449, 57 L.Ed. 820 (1913) (citing the Berkeley Peerage case, 4 Campb. 401 (1811), and the Sussex Peerage case, 11 Clark & F. 85 (1844).

Professor Wigmore has criticized the traditional position as an arbitrary distinction, arguing that ". . . the principle of experience that a statement asserting a fact distinctly against one's interest is unlikely to be deliberately false or heedlessly incorrect. . . . which is the basis of the exception applies equally to pecuniary as to penal interest. V Wigmore, Evidence, §§ 1457, 1476 (3d Ed.). In *Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284 (1945), our supreme court extended the exception to include declarations against penal interest in civil cases. *Id.* at 289. The court discussed Wigmore's position and concluded that "in every realistic sense" this character of declaration was a declaration against interest. Our courts have, however, continued to exclude declarations against penal interest in criminal cases, *e. g., State v. Brown*, 404 S.W.2d 179 (Mo.1966); *State v. Williams*, 309 Mo. 155, 274 S.W. 427 (1925), although an increasing number of jurisdictions have held such declarations admissible, *e. g., People v. Spriggs*, 60 Cal.2d 868,

36 Cal.Rptr. 841, 389 P.2d 377 (1964) (in banc); *People v. Brown*, 26 N.Y.2d 88, 308 N.Y.S.2d 825, 257 N.E.2d 16 (1970); *State v. Gardner*, 13 Wash.App. 194, 534 P.2d 140 (1975); *contra, United States v. Brandenfels*, 522 F.2d 1259 (9th Cir.), cert. den., 423 U.S. 1033, 96 S.Ct. 564, 46 L.Ed.2d 406 (1975); *Pitts v. State*, 307 So.2d 473 (Fla. App.) cert. den., 423 U.S. 918, 96 S.Ct. 302, 46 L.Ed.2d 273 (1975); see also Note, Declarations Against Penal Interest: Standards of Admissibility Under an Emerging Majority Rule, 56 B.U.L.Rev. 148 (1976). The Federal Rules of Evidence recognize an exception for statements which tend to expose the declarant to criminal liability and are offered to exculpate the accused only if corroborating circumstances clearly indicate the trustworthiness of the statement. Fed. Rules Evid. Rule 804(b)(3), 28 U.S.C.A. (1975); *e. g., United States v. Barrett*, 539 F.2d 244 (1st Cir. 1976); *United States v. Harris*, 501 F.2d 1 (9th Cir. 1974).

 Even if we were to extend the exception to criminal cases, appellant's offered declaration would still be inadmissible due to insufficient foundation. There are four requirements necessary to admit a declaration against interest: (1) unavailability of the declarant as a witness, (2) declaration relates to a fact against the apparent pecuniary, proprietary or penal interest of the declarant when made, (3) declaration concerns a fact personally cognizable by declarant, and (4) declaration made under circumstances which render it improbable that a motive to falsify exists. *Straughan v. Asher*, 372 S.W.2d 489, 494 (Mo.App.1963), citing 31A C.J.S. Evidence § 217. Although the Restatement has eliminated the requirement of unavailability of the declarant, ALI, Restatement Model Code of Evidence, § 509(1), Comment c, the Federal Rules and our supreme court have consistently required the declarant to be unavailable as a witness. Fed.Rules Evid. Rule 804(b)(3), 28 U.S.C.A. (1975); *e. g., United States v. Goodlow*, 500 F.2d 954 (8th Cir. 1974); *Jack Neilson, Inc. v. Chicago Ins. Co.*, 429 F.2d 540 (5th Cir. 1970); *Roush v. Alkire Truck Lines*, 299 S.W.2d 518 (Mo.1957); *Sutter v. Easterly*, 354 Mo. 282, 189 S.W.2d 284

(1945); *Straughan v. Asher*, supra. It must be shown that as a practical matter the declarant is unavailable, due to death, insanity, illness, absence from the jurisdiction or supervening incompetency through interest. *Straughan v. Asher*, supra at 495 citing V Wigmore, Evidence § 1456 (3d ed.).

In this case appellant failed to adequately demonstrate that the declarant Charles Burston was unavailable as a witness. Appellant asserted only that the declarant could not be found. Appellant's attorney admitted that the declarant had not been subpoenaed. Appellant also argued that the declarant could have exercised his constitutional privilege against self-incrimination and would therefore have been unavailable as a witness. The declarant must, however, appear as a witness and then refuse to testify to be considered unavailable. *E. g., Sutter v. Easterly*, supra; *Moore v. Metropolitan Life Ins. Co.*, 237 S.W.2d 210 (Mo.App.1951). Furthermore, appellant has not shown any corroborating circumstances or other indicia of trustworthiness. The declarant's statement was not reduced to writing, signed or sworn to by the declarant, or witnessed by any person other than appellant. Because appellant failed to establish an adequate foundation for the declaration against penal interest, the trial court did not err in excluding such statement from the evidence.

 Appellant's second point concerns instructions. Appellant urges that Instruction No. 8 (MAI–CR 2.76) was improper because it allowed the jury to find appellant guilty of burglary but not guilty of stealing, which appellant argues is an inconsistent verdict. The instruction was submitted in its exact form as written. Rule 20.02, V.A.M.R.; *e. g., State v. Davison*, 545 S.W.2d 723 (Mo.App.1977). Moreover, when a defendant is charged with two criminal offenses that involve different elements, such as second degree burglary, § 560.045, RSMo 1969, and stealing, § 560.- 156 RSMo 1969, the jury may consistently find the defendant guilty of burglary only, *e. g., State v. Thomas*, 452 S.W.2d 160, 164

(Mo.1970). The elements of burglary second degree are breaking and entering with the intent to steal or to commit a felony. § 560.045 RSMo 1969; *e. g., State v. Sanderson,* 528 S.W.2d 527 (Mo.App. 1975); *State v. Cox,* 527 S.W.2d 448 (Mo. App.1975). Appellant's acquittal of stealing does not necessarily contradict the element of intent to steal where there is other evidence of such intent. *E. g., State v. Hooper,* 494 S.W.2d 306 (Mo.1970); *State v. Smith,* 521 S.W.2d 38 (Mo.App.1975).

Appellant also argues that the trial court erred in giving Instructions No. 8 (MAI–CR 2.76) and No. 9 (MAI–CR 13.10) in reverse order. This is error. Failure to comply with the Missouri Approved Criminal Instructions is error; however, the prejudicial effect of such error is to be judicially determined. Rule 20.02(e) V.A.M.R.; *e. g., State v. Boyington,* 544 S.W.2d 300 (Mo. App.1976). Normally, the burden of demonstrating a lack of prejudice would fall upon the state, *Watterson v. Portas,* 466 S.W.2d 129 (Mo.App.1971), but in this case appellant failed to include this allegation of error in his motion for a new trial and therefore failed to preserve this point for review. Our review is limited to whether the reversal of the order of the instructions by the trial court was plain error. *State v. Johnson,* 537 S.W.2d 816 (Mo.App.1976). We conclude that it was not. The actual verdicts and the 'separate verdict forms indicate that the jury considered each offense charged separately. *Id.* at 820; *State v. Nelson,* 532 S.W.2d 855, 857 (Mo.App.1975).

Appellant's final point is that Instruction No. 9 was erroneously submitted to the jury because it precluded the jury from considering whether a straight razor is a "dangerous and deadly weapon" under § 564.610 RSMo 1969. The statute specifically includes "any kind of firearms, bowie knife, springback knife, *razor,* metal knucks, billy, sword cane, dirk, dagger, slung shot (sic) or other similar deadly weapons." (Emphasis added.) Appellant was carrying the straight razor in his back pants pocket. It was not observable. In *State v. Dorsey,* 491 S.W.2d 301 (Mo.1973),

the court specifically held that any one of the weapons enumerated in the statute is a dangerous and deadly weapon as a matter of law and that carrying one of those weapons in a concealed manner is a violation of the statute, *Id.* at 302. In *State v. Campbell,* 507 S.W.2d 431 (Mo.App.1974), the court held that since a firearm is mentioned in the statute as being dangerous and deadly, no additional proof that defendant's gun was a deadly weapon was required or necessary. *Id.* at 433. Furthermore, MAI–CR 13.10, Notes on Use 2 (1973), specifies that if the weapon is one of those enumerated in the statute, then the second paragraph of the instruction which requires a jury finding that the weapon in question was a dangerous and deadly weapon should be omitted.

Appellant also argues that the razor was not a dangerous and deadly weapon because it had been wrapped with a rubber band. This does not deprive the razor of its character as a dangerous and deadly weapon. In *State v. Boyd,* 492 S.W.2d 787 (Mo.), cert. den., 414 U.S. 1069, 94 S.Ct. 579, 38 L.Ed.2d 475 (1973), a pistol wrapped in a sock and found in an attache case was found as a matter of law to retain its character as a dangerous and deadly weapon. *Id.* at 792. Appellant finally argues that the statute cannot include "straight razor" because it specifically refers to a "razor." We do not agree and believe a straight razor is within the meaning of the statute.

Accordingly, judgment is affirmed.

CLEMENS, P. J., and SMITH, J., concur.